## CLARKS LANE GARDEN APARTMENTS, INC. *v.* SCHLOSS

[No. 119, October Term, 1950.]

*Decided March 16, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Nathan Hamburger,* with whom were *David P. Gordon, Carrol Hament* and *Charles C. Hartman, Jr.,* on the brief, for the appellant.

*David S. Sykes* and *Lawrence I. Weisman,* with whom were *Nyburg, Goldman & Walter* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Baltimore City Court reversing action by the Board of Municipal and Zoning Appeals approving an application for a permit to construct garden type apartments on the southeast side of Clarks Lane in Baltimore City. The development plan embraces a tract between Park Heights Avenue and Reisterstown Road in a Residential Use, E Area District, and calls for the erection of six garden type apartment units to be occupied by 80 families. The evidence shows, and the court found, that the entire tract contains 5.0145 acres, but if proposed streets on the northeast and southwest sides of the tract are excluded, the tract would contain only 4.4201 acres. The court held that the proposed plan violated the zoning ordinance in that on an area of 4.4201 only 71 families could be housed and the plan would not meet the requirement of lot lines for each building held necessary in *Norwood Heights Imp. Ass'n v. Mayor and City Council of Baltimore,* 191 Md. 155, 60 A. 2d 192. After the decision of that case, the Ordinance (No. 1247, approved March 30, 1931) was amended by adding to paragraph 28, the following exception: "L. Apartment houses designed and erected as a project with singleness of use and operation and with central heating and other facilities (commonly known as garden type apartments), shall be permitted in all area districts without providing a separate lot for each structure or building involved in the project: provided, the area of such project shall cover at least five acres of land; that the number of families to be housed shall comply with family per acre require-

ments of paragraphs 21 and 22 and provided further, that no building or structure shall be constructed nearer than twenty feet from any other building or structure in the project. In applying the area and yard provisions of the Zoning Ordinance to such projects, the property lines for the entire project shall be used as lot lines." The question presented is whether the proposed streets can be included in the calculation so as to comply with the five-acre provision.

There does not seem to be any express provision in the Ordinance dealing with the question. "Street" is defined in paragraph 44 as applying to "any street thirty feet or over in width". "Lot" is defined as "a parcel of land now or hereafter laid out and occupied by one building and the accessory buildings or uses customarily or necessarily incident to it, including such open spaces as are required by this ordinance." In paragraphs 21 and 22, dealing with the minimum depth of rear yards, it is provided (22C): "In computing the depth of a rear yard abutting on an alley the measurement may include one-half the width of such alley." There is no such exception in regard to front yards abutting on streets. Paragraph 24 sets out a table of minimum depths of "front yards along undeveloped streets" which "may be laid out after the passage of this ordinance". Inferentially at least the Ordinance would seem to exclude streets, and even undeveloped streets, from the area requirements.

In *Norwood Heights Imp. Association v. Mayor and City Council of Baltimore, supra,* it was said, 191 Md. at page 159, 60 A. 2d at page 194: "The plan of the development in this case shows a tract of land, after the area for streets is deducted, of 9.3 acres * * *. 80 families are to be housed on the 5.2 acres which constitutes the E-area * * *." If this case was the genesis of the amendment, it may well be contended that the City Council had in mind the fact that proposed streets were excluded in the plan there discussed. Moreover, in *Akers v. Mayor and City Council of Baltimore,* 179 Md. 448,

453, 20 A. 2d 181, 183, the first case dealing with garden type apartments, it was said that the project was approved by the Commission on City Plan "on condition that the two adjacent public highways * * * be widened in the future by taking from the property, and the owners agree to make provision for the widening, as they must * *. *." This reduced the area so as to permit housing of a smaller number of families. The court said: "The adjustment is not shown, but with the proffer of adjustment of the plans made there is no room for disapproval and restraint of the prospect because of the need of it." In *Windsor Hills Imp. Ass'n v. Mayor & City Council of Baltimore,* 195 Md. 383, 73 A. 2d 531, it was noted that the applicant had consented to reduce the area and meet density requirements, incident to the widening of two existing streets.

The appellant contends that the area reserved for future streets may be included because such streets may never be opened, and until actually acquired by the City the owner of the reserved space may make any use of it he pleases. It is clear from the evidence, as found by the trial court, that "The City Planning Commission required provision for the said future streets before they approved the plans for this subdivision, and the evidence shows sound reason for their action. * * * The evidence indicates that the streets will certainly be opened, and probably soon". As pointed out in *Windsor Hills Imp. Ass'n v. Mayor and City Council of Baltimore, supra* 195 Md. at page 393, 73 A. 2d at page 535, approval by the Planning Commission is prerequisite to the issuance of a permit by the zoning authorities. Baltimore Charter (1949 ed.) Sections 115-119. An appeal from a decision of the Commission is provided in Section 120. It is true that Section 114 provides that the adoption of an Official Detailed Plan showing proposed streets is not to "be deemed the opening or establishment of any street, or the taking of any land for public purposes, but solely as a designation of the location shown thereon for future acquisition for public use * * *." But we are

not here concerned with the question whether an owner, in a proper proceeding, could compel the City to either condemn the land so designated or permit its use for building purposes. The question before us involves only the construction of Paragraph 28 L of the Zoning Ordinance. In construing that paragraph we may consider the fact that the Board cannot ignore the Official Detailed Plans of the Planning Commission. We think the area of proposed streets cannot fairly be included as a part of a project, which under other provisions of the Ordinance embraces only buildings and yards, within the meaning of the five-acre restriction set up in the exception created by Paragraph 28 L. As pointed out by the trial court, a contrary construction would authorize the development of vacant land in a manner that would violate the area requirements as soon as the proposed streets were opened. The very fact that the paper development, as laid out, accepts the paper streets as a part of the plan, is at least some indication that their future use as streets, and not as a part of the building program, is anticipated.

*Order affirmed, with costs.*