[Civ. No. 19608.   Second Dist., Div. One.   Oct. 1, 1953.]

THOR A. CHRISTENSEN et al., Appellants, v. RUTH THURBER et al., Respondents.

G. G. Baumen for Appellants.

Delbridge, Hamblin & Linton and Maitland Bishop for Respondents.

SCOTT (Robert H.), J. pro tem.—Plaintiffs appeal from an adverse judgment in an action brought by them seeking to enjoin defendants from constructing a building in alleged violation of an ordinance of the city of Sierra Madre.

Plaintiffs own homes on Manzanita Avenue in the city of Sierra Madre near property of defendants. The latter own a parcel of land with 150 feet frontage on Manzanita, originally consisting of Lot 30 (100 feet frontage), and one-half of Lot 29 (50 feet frontage) adjoining it. Lot 30 has a depth of 190 feet on Park Avenue and Lot 29 has an equal depth. Prior to the time of trial defendants had sold a portion of Lot 30 facing Park Avenue at the end farthest away from Manzanita Avenue. After deducting the area thus sold, defendants had 20,985 square feet of contiguous land remaining in their parcel, made up of the remaining portions of Lots 30 and one half of Lot 29. On this parcel was located the house which was the dwelling of defendants, facing on Manzanita and placed partly on Lot 29 and partly on Lot 30. At the time the complaint was filed in the case, defendants had obtained a building permit from the city and had started to erect another residence on their parcel, located at the side of the one already there, and between it and Park Avenue.

It is plaintiffs' contention on appeal that the permit should not have been issued and that defendants' erection of the additional house is contrary to city ordinance, is objectionable and should be precluded by court order.

It is undisputed that Ordinance 391 of the city of Sierra Madre provides in section 4, subparagraph C that: "The minimum site area shall be one lot, or seventy five hundred (7500) square feet of lot area per each dwelling."

Plaintiffs assert that on Lot 30, considered by itself and without including the area of one-half of Lot 29 not covered by the existing structure, there is not sufficient land to provide a 7,500 square foot site, because part of it has been sold and part of it is covered by the house already built. They do not deny that the combined area remaining of the two lots exceeds 15,000 square feet.

Defendant Ruth Thurber consulted the city attorney of said city on July 16, 1951, concerning the proposed erection of the added residence and was advised by him that more than one structure could be erected on one lot provided there were 7,500 square feet of lot space for each building occupying a portion of said lot and "that if that area included more than 15,000 square feet that she could safely proceed with the building." On September 17, 1951, said defendant showed the city attorney and the building inspector of said city a drawing which showed Lots 29 and 30 and indicated the portion of Lot 30 which had been sold and showed the remaining area of 20,935 square feet, and the city attorney then informed said defendant and the building inspector that "it was lawful to erect said building in the place indicated on the drawing as said lots 29 and 30."

At a meeting of the city council of the city of Sierra Madre on September 25, 1951, at which defendants were present, said city attorney advised the council and defendants that the erection of the building on the northern portion of Lot 30 complied in all respects with the Ordinance 391.

Plaintiffs filed their complaint in this case on October 17, 1951. They secured a preliminary injunction restraining defendants from proceeding with construction pending final determination of the suit.

It cannot be said as a matter of law that the interpretation of the quoted provision of section 4(C) was erroneous. It was consistent with previous rulings by the city attorney on the same question, according to his statement, and could not therefore be regarded as a special favor or concession to defendants in this case.

"The contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect, while not controlling, is given great respect." (*County of Los Angeles* v. *Frisbie*, 19 Cal.2d 634, 643 [122 P.2d 526].)

". . . the administrative interpretation of a statute will be accorded great respect by the courts and will be followed if not clearly erroneous." (*Bodinson Mfg. Co.* v.

*California Emp. Com.,* 17 Cal.2d 321, 325 [109 P.2d 935]; *County of Los Angeles* v. *Superior Court,* 17 Cal.2d 707, 712 [112 P.2d 10]; *Adoption of Parker,* 31 Cal.2d 608, 615 [191 P.2d 420].)

Plaintiffs admit that, "If the proposed building were being constructed as a sole dwelling upon an approved and subdivided lot within the city, regardless of the area of such lot . . . respondents (defendants) would have adequate area to comply with the requirements of the Ordinance."

Section 4, subparagraph F of Ordinance 391 provides:

"Rear Yard Required: . . . On lots having two or more dwellings the required rear yard for the dwelling nearest the rear lot line shall be not less than ten (10) feet and the distance between separate dwellings on the same lot shall be not less than thirty-five (35) feet." It is urged by plaintiffs that defendants' new house violates this requirement. It appears however that the structure which was located on the south end of Lot 30, being that area which had been sold by defendants, is more than the required 35 feet distance from the new house. ■ It is appellants' impression that section 4F (which as above noted deals with "Rear Yard Required") also applies to the side yard, and points out that there is a distance of only about twelve (12) feet, and not thirty-five (35) feet, side yard between defendants' older house fronting on Manzanita Avenue and the new house similarly fronting on the same street which is the subject of this controversy.

The applicable provisions of the ordinance on this feature of the case seem to be contained in section 4E which provides in part: "Side yard Required: On the interior lots there shall be a side yard on each side of a dwelling . . . of not less than five (5) feet. . . .

"On corner lots, the required side yard line adjoining the interior lot shall be the same as for interior lots. The required side yard on the street side shall be ten percent (10%) of the width of the lot, provided it shall not be less than ten (10) feet; . . ."

Plaintiffs made no claim in their complaint of any violation of the last paragraph above quoted, and the diagram they attached to the complaint shows a side yard on the street side of 10 feet, which would be 10 per cent of the width of Lot 30. The distance of twelve (12) feet between the old house and the new house satisfies legal requirements as to side yards.

Various other requirements of city ordinances are mentioned, which were determined by the trial court to have no application to the present case. We find nothing in the pleadings or evidence which requires a reversal of the judgment. Defendants are entitled to proceed with the erection of the additional house as contemplated.

As a court of equity the trial court had before it the subdivision map which was filed in January, 1907, showing lots 100 feet wide and 190 feet deep, and doubtless considered evidence including matters of common knowledge as to the changes which have taken place since that time in that community and in those adjacent to it. It may well have concluded that equity required an interpretation and application of the city's ordinances in a manner which was legally correct but would permit the highest and best use of property by its owners consistent with rights of other property owners and the public. We are unable to say that the decision of the trial court, based on facts concerning which there is no dispute, was legally erroneous or inequitable to the plaintiffs.

Judgment affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied October 20, 1953, and appellants' petition for a hearing by the Supreme Court was denied November 24, 1953.