[Civ. No. 21669.   First Dist., Div. Three.   Apr. 29, 1965.]

MURRAY METZENBAUM, Plaintiff and Appellant, v. THE CITY OF CARMEL-BY-THE-SEA et al., Defendants and Respondents.

Donald H. Smith for Plaintiff and Appellant.

John W. Morse, City Attorney, Hudson, Martin, Ferrante & Street and Webster Street for Defendants and Respondents.

DRAPER, P. J.—This is an appeal from a judgment refusing to enjoin an alleged violation of the zoning ordinance of the City of Carmel-By-the-Sea.

The facts are undisputed. Carmel has adopted a comprehensive zoning ordinance regulating the use of private property within the city. Respondents Doud and Watson are the owners of an L-shaped parcel of land 12,000 square feet in area. The property has a frontage of 40 feet on Scenic Road and formerly had a frontage of 80 feet on Del Mar Avenue. In 1952 the city vacated and closed Del Mar Avenue in the vicinity of respondents' property, and access to the parcel from the west is now denied, leaving only the 40-foot frontage on Scenic Road to provide access.

Respondents applied to the city's board of adjustments for a use permit under which their property would be divided into three building sites for residential purposes, each 40 feet by 100 feet. One of these, lot 4A, would front on Scenic Road to the east. Since there is no access from the west because Del Mar Avenue has been closed, the two westerly lots, 4B and 4C, would be reached by a private road easement 10 feet wide along the southerly side of the 100 foot length of lot 4A. This easement would run to contiguous easements, each 17 feet by 30 feet, at the easterly ends of lots 4B and 4C. These easements would afford entry to the garages on lots 4B and 4C.

The board granted respondents a use permit and thus established three building sites on the property. An appeal

to the city council followed, as permitted by the zoning ordinance. After hearing, the council divided two to two on the issue presented. The fifth member of the council deemed himself disqualified and did not vote. Since three votes are required to overrule or modify the action of the board, that action remains effective. Appellant's suit for an injunction followed.

The trial court concluded that the use permit was properly issued, and that it was not invalidated by its reliance upon a private road easement as a means of ingress and egress.

Section 1305.2 of the Carmel zoning ordinance establishes the requirements for single family building sites. Subdivisions (a), (b), and (c) of that section are not here relevant. Subdivision (d), describing a permissible R-1 building site, reads: "Any other parcel of land having an area of not less than 4000 square feet provided the Carmel Planning Commission has issued a Use Permit, authorizing the use of such parcel as a Building Site in the manner provided by Article 10 of this Division." This section specifically governs the use permit here sought. Appellant urges the applicability of section 1333. But subdivision (a) of the latter section authorizes the board to allow uses "hereinbefore expressly permitted upon" permit. It is clear that subdivision (k), to which appellant points, does not limit a use authorized, with permit, by section 1305.2, but applies only to use permits not expressly authorized by earlier sections.

The real question here is whether the private road easements are to be considered parts of the lots, or are to be excluded in determining lot area. If they are considered part of the lot area, each lot contains 4,000 square feet as required by section 1305.2(d). If they are not considered part of the lot area, each lot is too small to meet the requirement.

■ Of course, use permits may be granted only as authorized by the ordinance (56 Cal.Jur.2d, Zoning, § 161).
■ Here, the ordinance requires, as conditions precedent to such grant, findings that the granting of a permit will not adversely affect the general zoning plan or the character of the neighborhood, and will not be injurious to the public health, safety or welfare. Such findings were made in this case. These findings are supported. The police and fire chiefs stated to the board that the development would not hamper the work of their departments.

The board also found, as required by the ordinance, that

special circumstances exist under which undue hardship would be inflicted by strict adherence to the ordinance. It found that Del Mar was closed in 1952 because of mutual agreement of the bordering property owners and the city council that public access should be denied, but that the council intended that private access to the westerly portion of respondents' land be afforded.

Significant here is the testimony at trial of the city building inspector, who said it was his practice to include private easements in computing lot area in all cases. He testified to issuance in 1946 of building permits for two lots, each of which contained 4,000 square feet only by including an easement strip in lot area.

Although contemporaneous and practical construction of an ordinance or statute by those whose duty it is to carry it into effect cannot alter its true meaning (*Johnston* v. *Board of Supervisors,* 31 Cal.2d 66, 74 [187 P.2d 686]), it is entitled to great respect (*Christensen* v. *Thurber,* 120 Cal.App.2d 517, 519 [261 P.2d 312]). Respondents owned this land in 1952, when Del Mar Avenue was closed. At that time, the administrative construction had been followed for at least six years, and lends credence to the board's finding of mutual agreement of council and the affected property owners that public access be barred, but private access permitted.

Moreover, the ordinance specifically vests in the board power "to interpret the meaning" of the zoning ordinance "when the meaning thereof is not clear." The ordinance is silent as to whether easement area is to be excluded or included in determining lot size. The board's interpretation in favor of respondents' contention seems, under the facts of this case, to be reasonable.

Appellant relies upon decisions from other jurisdictions (*Loveladies Property Owners Assn.* v. *Barnegat City Service Co.,* 60 N.J.Super. 491 [159 A.2d 417]; *Sommers* v. *City Council of Baltimore,* 215 Md. 1 [135 A.2d 625]; *Clarks Lane Garden Apts.* v. *Schloss,* 197 Md. 457 [79 A.2d 538]; and *San-Lan Builders, Inc.* v. *Baxendale,* 28 N.J. 148 [145 A.2d 457]). These decisions hold that road easement area cannot be considered in computing lot size. But they deal with different ordinances, other communities, and distinct fact situations. We are concerned with the Carmel ordinance as it applies to the particular property here in issue. Even within this state,

cities have widely varying needs and problems in zoning. Our Legislature has wisely recognized this variety, and has carefully refrained from attempting rigid standardization of all zoning in all cities. Rather, it has left to the cities a wide discretion, limited, of course, by constitutional bounds and by the broad requirements of statute. No excess of those limits is here suggested, and thus there is no reason for the courts to intervene in this problem of local government.

Judgment affirmed.

Devine, J., concurred.

SALSMAN, J.—I dissent.

The Carmel zoning ordinance contemplates that R-1 building sites shall have an area of 4,000 square feet. It is silent, however, upon the question whether the area of private road easements, such as that proposed by respondents Doud and Watson, may be included in the computation of the total area required. No appellate court in this state seems to have considered this question, although it has engaged the attention of courts in other jurisdictions and has been the subject of comment by some authorities on zoning and planning. Thus in 1 Rathkopf, The Law of Zoning and Planning (3d. ed.) page 34-11, the author discusses the minimum area requirements established by zoning ordinances and states that: "In computing the size of lots, land contained in streets, public or private, which give access to the lot is excluded." In *Loveladies Property Owners Assn.* v. *Barnegat City Service Co.,* 60 N.J. Super. 491 [159 A.2d 417], the court held that the area of certain road easement strips over which access was gained to the building lots there established could not be considered for the purpose of meeting the minimum area requirements of the ordinance under consideration. Substantially the same result was arrived at in *Sommers* v. *City Council of Baltimore,* 215 Md. 1 [135 A.2d 625]; *Clarks Lane Garden Apts.* v. *Schloss,* 197 Md. 457 [79 A.2d 538], and *San-Lan Builders, Inc.* v. *Baxendale,* 28 N.J. 148 [145 A.2d 457]. (See also the annotation in 95 A.L.R.2d 751, 766-767, 782-783.) These decisions are not controlling, of course, but are persuasive.

There are good reasons for holding that minimum area requirements for a single family residential building site cannot reasonably be construed so as to include the area of private easements. Although road easements, such as are pro-

posed here, are private, they have a public character also, and of necessity are available for uses which are not strictly private. Here, for example, the easements proposed would be open to use by municipal officers for police and fire purposes, and equally available for such public utility vehicles as are necessary to serve water, gas and electrical installations, and remove refuse. No single resident could make exclusive use of the road easement, but it would be available to all alike, including the guests and invitees of each. The general purpose of minimum area requirements for an R-1 building site is to control population density and thus avoid the overcrowding of land. (*Clemons* v. *City of Los Angeles,* 36 Cal.2d 95, 101 [222 P.2d 439].) That objective is diminished rather than advanced if the area of private road easements is included in the computation of the minimum area required for an R-1 building site.

The comprehensive zoning ordinance of the city describes Carmel as ''... primarily, essentially and predominantly a residential City...'' with business and commerce subordinated to its residential character. Thus, open spaces on all R-1 sites are required, and front, side and rear setback lines are established. No building may cover more than 35 per cent of the site area, and no more than one room on any building site may be used as a kitchen. These and other provisions of the ordinance disclose an intention to restrict the overuse of land for residential purposes, a legitimate objective and one long upheld.

Authority to include the area of private easements in computing the minimum area required for an R-1 building site has not been given to the Board of Adjustments. Although the board is given the power to interpret the ordinance, it is fundamental that this grants only the power to ascertain what is in the ordinance itself, not to insert what has been omitted or to omit what has been inserted. Here no power has been given to the board to include any area of a private easement in the total area required for an R-1 building site. To imply such a power would tend to defeat the declared objectives and purposes of the ordinance. If the board may include the area of the private road easement here proposed in reaching the minimum area required for an R-1 building site, it might in other cases include a larger area of private road easement. Thus the determination of the minimum area of an R-1 building site could be decided by the board on a case-by-case basis, whereas the ordinance, reasonably interpreted,

requires an unencumbered minimum area of 4,000 square feet. The ordinance may not be read so as to find an implied power in the board to vary the minimum area by more than the 10 per cent (10%) allowed by section 1332(a). In granting the use permit here challenged, the board exceeded its jurisdiction and its ruling should not stand.

Reading the ordinance to exclude from the minimum area of R-1 building sites the area of private road easements does not foreclose the city from reaching a contrary result. If the city council, on behalf of the citizens it represents, decides that local objectives will best be realized by permitting the area of private road easements to be included in the computation of the minimum area required for an R-1 building site, the zoning ordinance may readily be amended to accomplish that result. On the other hand, a conclusion that a zoning ordinance which does not expressly exclude the area of private road easements in a determination of the required minimum area for an R-1 building site may be construed so as to permit the inclusion of such area in arriving at the required total may well have application to other California communities having ordinances similar to that of Carmel.

Respondents seek to argue that we are bound by the administrative interpretation of the zoning ordinance heretofore made by the city building inspector. At trial the building inspector testified that: "Any building site on which there may be some type of private easement, I take the entire area including the easement." He also testified that in 1946 a use permit was granted for two building sites of 4,000 square feet each, both of which included an easement strip.

It is true that the contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect is entitled to great respect. (*Christensen* v. *Thurber*, 120 Cal.App.2d 517, 519 [261 P.2d 312].) It is not controlling, however, and the construction put upon a zoning ordinance by city officials cannot alter its true meaning. The final responsibility for the interpretation of an ordinance or statute rests with the courts rather than administrative officials. Administrative interpretation of an ordinance or statute has been said to be " '... a weight in the scale, to be considered but not to be inevitably followed.' " (*Johnston* v. *Board of Supervisors*, 31 Cal.2d 66, 74 [187 P.2d 686], and cases cited; see also 45 Cal.Jur.2d, Statutes, § 176, pp. 674-5.) Here there has been little administrative interpretation of the zoning ordinance insofar as it relates to the inclusion or exclusion of the area of private road easements in the com-

putation of the minimum area necessary for an R-1 building site. The building inspector's testimony concerning two building sites established in 1946 in which the area of private road easements was included in the total site area appears to have involved a single application. The question was not again raised until the Doud-Watson application was made which ultimately gave rise to this appeal.

In my view of this case, the city council has abdicated its legislative responsibilities in behalf of an administrative board not directly answerable to the people. I would reverse the judgment and invite the council to clarify its ordinance.

Appellant's petition for a hearing by the Supreme Court was denied June 23, 1965. Traynor, C. J., was of the opinion that the petition should be granted.