482 A.2d 908

**HOWARD COUNTY, Maryland**

v.

**JJM, INC.**

No. 140, Sept. Term, 1983.

Court of Appeals of Maryland.

Oct. 25, 1984.

Motion for Reconsideration Denied Dec. 3, 1984.

Paul T. Johnson, Sr. Asst. County Sol., Ellicott City (Timothy E. Welsh, County Sol., Ellicott City, on the brief), for appellant-cross/appellee.

Lewis Straughn Nippard, Ellicott City, for appellee-cross/appellant.

Argued before SMITH, ELDRIDGE, COLE, DAVIDSON,* RODOWSKY and COUCH, JJ. and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), specially assigned.

SMITH, Judge.

At issue in this case is the validity of a Howard County statute requiring developers to "reserve within a proposed subdivision such part(s) of the right-of-way for a new state road designated on the general plan and included in the state's twenty-year highway needs inventory which is located within the subdivision." We perceive the central issue here to be whether the proposed subdivision reasonably generates the need for the highway in question. No evidence of such need has been presented. Therefore, we agree with the circuit court that when the statute is read as a whole it deprives the owner of all use of its land and hence, as applied in this case, is an unconstitutional taking of property without compensation. Thus, we shall affirm.

I

Howard County is a charter county under Md. Const. art. XI–A. It is authorized by Maryland Code (1957, 1981 Repl.Vol.) Art. 25A, § 5(X) to enact local laws "relating to zoning and planning including the power to provide for the right of appeal of any matter arising under such planning and zoning laws to the circuit court" and thence to the Court of Special Appeals. Pursuant to this authority Howard County Charter § 1105 established the Office of Planning and Zoning and the County enacted subdivision regulations. Howard County Code (1977, 1980 Supp.) § 16.-113(b)(2) provides in pertinent part:

"The owner shall reserve within a proposed subdivision such part(s) of the right-of-way for a new state road designated on the general plan and included in the state's twenty-year highway needs inventory which is located

---

* Davidson, J., participated in the hearing and in the conference of the case in regard to its decision, but because of illness did not take part in the adoption of the opinion.

within the subdivision. Such reservation shall be in the general location and to the right-of-way width specified by the state."

Definitions of terms used in the County's subdivision and land development regulations are contained in § 16.108. Section 16.108(54) defines "reservation" as "the assignment of land by a developer for a specified use, to be held by him or his assignees for that use and no other use to a future time."

In the fall of 1980 appellee JJM, Inc., submitted a subdivision plan to the Office of Planning and Zoning. The plan was for the Hammond Hills Subdivision. It involved a 115.12 acre parcel located on the northeast side of existing Maryland Rt. 216 and approximately 1,500 feet east of U.S. Rt. 29. In compliance with Howard County Code § 16.-113(b)(2), the subdivision plat showed the right-of-way for the proposed relocation of Rt. 216 as being reserved. This right-of-way cut a wide swath through the proposed development. A small part of the tract was between the existing Rt. 216 and the proposed Rt. 216. Most of the land was on the north side of the proposed relocated Rt. 216. The right-of-way reservation for Rt. 216 was established in 1971 when the County Council adopted the general plan of highways. The relocation of Rt. 216 was included in the State's 1980 twenty-year highway needs inventory. The Office of Planning and Zoning approved this subdivision plan in December 1980.

On December 7, 1981, JJM submitted a revised sketch plan for the same property. The revised plan showed residential lots within the right-of-way reservation area. Because the revised plan did not comply with Howard County Code § 16.113(b)(2) and § 16.111(3), specifying that subdivision layouts "shall be in accordance with the highway part of the transportation element," the Office of Planning and Zoning refused to approve the subdivision.

JJM appealed to the Howard County Board of Appeals. It was established in proceedings before the board that the

proposed relocation of Rt. 216 had not been included within the State's six-year construction plan, a necessary step for its construction, and that the process of including Rt. 216 in the six-year construction plan would take at least one year, but probably longer. The Director of the Office of Planning and Zoning testified that from 1971, the time the proposed relocation was incorporated into the County's general plan, to 1981, the time of the submission of the revised plan, all that had been accomplished was a determination that the proposed road would be built at some time in the future. He further stated that, given the circumstances of the case, there was no possibility that a variance would be granted to the developer.

The Board of Appeals affirmed the decision of the Office of Planning and Zoning, stating that the latter had acted in accordance with Howard County Code § 16.113(b)(2). JJM appealed to the Circuit Court for Howard County. It sought declaratory and injunctive relief.

The circuit court held § 16.113(b)(2) unconstitutional as applied to JJM's revised sketch plan. In so holding it first noted that JJM was required to reserve a portion of its land, without compensation, for an indefinite period of time. Second, the court recognized not only the right of a governmental authority to regulate the development of private property by means of the police power, but also the fact that an exercise of the police power which imposes an "onerous burden" on the owner's property rights constitutes a compensable taking. Third, the court reviewed our decision in *Md.-Nat'l Cap. P. & P. Comm'n v. Chadwick*, 286 Md. 1, 405 A.2d 241 (1979). It determined that the following proposition emerged from that case: "A regulation requiring a reservation limited in scope and duration would be a valid exercise of the police power. Section 16.113(b)(2) must therefore meet the test of reasonableness." The court concluded that, given the facts before it, the application of the Howard County statute to JJM deprived the property owner of the right to make "any effective use of the property placed in reservation." The court

further determined that the effect of the law was to "'freeze' the property of a prospective condemnee by restricting, inhibiting and preventing the owner from improving or changing the condition of its property." It held that these factors, combined with the absence of any opportunity for variance relief, rendered the law unconstitutional as applied.

Howard County and JJM appealed to the Court of Special Appeals. We granted a writ of certiorari before consideration of the matter by the intermediate appellate court. In the view we take of this case we have no need to consider JJM's appeal.

## II

JJM has moved to dismiss Howard County's appeal. Hence, we must first decide that issue.

■ The right of appeal is wholly statutory. Therefore, the General Assembly must expressly grant such a right. *See, e.g., Maryland Board v. Armacost,* 286 Md. 353, 354–55, 407 A.2d 1148, 1150 (1979); *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 500, 331 A.2d 55, 64 (1975); *Urbana Civic v. Urbana Mobile,* 260 Md. 458, 461, 272 A.2d 628, 630 (1971). We have held that a quasi-judicial agency, such as the Howard County Board of Appeals in this case, cannot institute an appeal when its decision is reversed by a circuit court absent an express grant of the right to appeal. We have reasoned in several cases that because the agency acts in a quasi-judicial capacity, it has no interest in an appeal from a decision it has rendered and therefore it cannot be deemed an aggrieved party. *See, e.g., Armacost,* 286 Md. at 356–57, 407 A.2d at 1151; *Employment Sec. Adm. v. Smith,* 282 Md. 267, 269–70, 383 A.2d 1108, 1110 (1978); *Bd. of Ex. of Land, Arch. v. McWilliams,* 270 Md. 383, 386, 311 A.2d 792, 794 (1973); *Board of Zoning Appeals v. Guns,* 259 Md. 368, 368–69, 269 A.2d 833, 833

(1970); *Zoning Appeals Board v. McKinney*, 174 Md. 551, 563–64, 199 A. 540, 545–46 (1938).[1]

JJM argues in this case that the appeal is brought on behalf of the Board of Appeals or the Office of Planning and Zoning and not on behalf of the County. To support this contention, it notes a letter written by the Director of the Office of Planning and Zoning to the County Solicitor in which an appeal from the circuit court decision was requested. Nevertheless, Howard County is named as a party on this appeal. The County Solicitor entered his appearance on behalf of the Planning Department in the circuit court and his office has been involved in the case at least from that time. Therefore, it would appear that if the County is authorized to be a party and if the solicitor is authorized to represent the County in suits of this nature, then the appeal in this case was properly brought.

Howard County Charter § 103 provides that "[t]he corporate name shall be 'Howard County, Maryland,' and it shall thus be designated in all actions and proceedings touching its rights, powers, properties, liabilities and duties." Section 405(b) provides that only the County Solicitor is authorized to represent the County and its "several offices, departments, boards, commissions and other agencies." The grant of this duty to the County Solicitor strongly implies that the drafters of the charter intended that the County should have adequate counsel in all legal matters in which it becomes involved. A catchall provision in § 904 of the charter expressly grants the County "all powers necessary and convenient for the conduct of its affairs," which obviously should include the power to defend its subdivision regulations against charges of unconstitutionality. The

---

1. Maryland Code (1957, 1982 Repl.Vol.) Art. 41, § 256A provides that "the political subdivisions of this State and their agencies and instrumentalities have the status of an interested person ... in all matters including appeals." That section is not applicable to this case because the case here does not arise under the Administrative Procedure Act, Code (1957) Art. 41, § 244 et seq.

Office of Planning and Zoning is the department of the County concerned with those regulations. It is logical for it to be the agency requesting the County Solicitor to proceed with an appeal in the name of the County in this case. Therefore, in construing the statute as a whole so as to avoid absurd consequences, it would seem that the County is authorized to be a party to the present appeal. *See In re Special Investigation No. 281,* 299 Md. 181, 200, 473 A.2d 1, 10 (1984). *See also Baltimore City v. Borinsky,* 239 Md. 611, 616, 212 A.2d 508, 510–11 (1965) (Court concluded that Baltimore City was a proper party to a suit given that the zoning ordinance at issue was a proper exercise of its police power and that Baltimore City had a legitimate interest in upholding its policies).

JJM, in urging that we dismiss the County's appeal, cites § 501(d) of the Charter, which states that the Board of Appeals "shall be a party to all appeals and shall be represented at any such hearing by the Office of Law." That section, however, deals with appeals *to,* not *from* the circuit court. In *Howard County v. Mangione,* 47 Md.App. 350, 423 A.2d 263 (1980), the Court of Special Appeals determined that § 501(d) did not attempt to bestow on the Board of Appeals the right of appeal normally granted an "aggrieved party." The court stated:

"While it may be administratively expedient to require the Board to be a party in the circuit court in order to provide that court on appeal with all the pertinent information which the Board had before it and upon which the Board reached its conclusion, there is nothing in this scheme which suggests that the charter intended to clothe the Board with the duty to represent Howard County in upholding the integrity of its zoning laws." 47 Md.App. at 356, 423 A.2d at 267.

Thus, § 501(d) does not alter the conclusion, based on other provisions of the charter, that Howard County is authorized to be a party to the present appeal.

III

The County argues that the requirement that a developer reserve a right-of-way in a subdivision for a proposed state road constitutes a valid exercise of the police power, not an unconstitutional taking of property without compensation. It says that under the circumstances here the subdivision regulation does not deprive JJM of all beneficial use of the property. Further, the possible diminution in the value of the property does not render application of the regulation a taking: diminution of value alone is not a proper basis for invalidating a police power regulation. It argues that the lower court not only overlooked this legal proposition, but also failed to recognize that the purpose of the reservation provision was to prevent the placement of improvements in the path of a proposed highway.

JJM contends that the reservation provision constitutes an unconstitutional taking of property without compensation. Relying on our decision in *Chadwick*, 286 Md. 1, 405 A.2d 241, JJM points out that no time limitation on the reservation of this property exists and no benefits or payments are to be made to it while the property is reserved. Accordingly, it is contended that JJM is deprived of all beneficial use of the property because reservation of that portion necessary for the relocation of Rt. 216 would disrupt development of the entire tract. JJM further argues that Howard County is not authorized to act as the State's agent for the purpose of reserving land for the use and benefit of the State.

The County urges that this case is controlled by *Krieger v. Planning Commission*, 224 Md. 320, 167 A.2d 885 (1961). *Krieger* also was a Howard County case. There a planning commission created under a public local law denied approval of a subdivision plan because it failed to take into consideration the fact that a road abutting the property in question was designated a "primary road," to have a minimum width of 100 feet. Further, the lot areas shown on the plan were not sufficient, excluding the bed of the planned road, to comply with the 20,000 square feet minimum lot size speci-

fied in the zoning regulations. In that case, the Court determined that the planning commission's action was reasonable:

"As the trial court pointed out, the purpose of these sections was to avoid subdivision and improvement of land in the path of a projected highway or in the path of a projected enlargement of an existing highway. If the Planning Commission were powerless to require compliance, the whole purpose of planning and zoning, which looks to the future, would be frustrated." 224 Md. at 323, 167 A.2d at 886.

Judge Henderson went on to say for the Court in that case:

"Planning with reference to future streets is no novelty in Maryland. See *Clarks Lane Garden Apts. v. Schloss,* 197 Md. 457, 460 [, 79 A.2d 538 (1951) ]. On the other hand, as noted in *Congressional School v. State Roads Comm.,* 218 Md. 236, 241, [146 A.2d 558 (1958),] there seems to be general agreement among the authorities that zoning cannot be used as a substitute for eminent domain proceedings so as to defeat the constitutional requirement for the payment of just compensation, in the case of a taking of private property for public use, by depressing values and so reducing the amount of damages to be paid. In that case we found it unnecessary to decide the validity of a zoning classification claimed to have been made to hold down the cost of subsequent acquisition by condemnation for highway use. Nor do we find it necessary to decide the question in the instant case.

"There is nothing in the record to show a present taking, as distinguished from a regulation of use, or to indicate that if, or when, the strip of land adjacent to the existing highway is condemned for purposes of widening, the owner will not be paid the full value thereof. Nor is the appellant precluded from putting the twenty-foot strip to whatever permissible use he pleases. There is no change in the use classification. He is simply denied a right to include it in computing the areas of lots fronting

on the road so that in the event of future widening in conformity to the master plan the lots will still comply with the applicable area requirements. The action of the Commission is not designed to keep the strip in an unimproved condition so that the cost of condemnation would be less. The setback provisions would prevent its development in any case. Moreover, it is not shown that the present or future value of the land would be diminished by compliance with the master plan and regulations. It may well be that its value would be enhanced or that the developer could recoup any additional expense from prospective lot purchasers." 224 Md. at 323–24, 167 A.2d at 887.

The Court rejected not only the contention of appellant that the absence of a guarantee from the State Roads Commission that the road would be widened in the future rendered the planning commission's action unreasonable, but also the argument that the planning commission had no authority to act as the State's agent in such a matter. The Court perceived no merit in these contentions because: the local code authorized adoption of a master plan; there was evidence that the County and the State Roads Commission coordinated road plans and highway development; and there was a foreseeable need for widening primary and arterial roadways in the County because of population expansion. 224 Md. at 325, 167 A.2d at 888. The Court concluded, "[T]here is no violation of constitutional principle." 224 Md. at 326, 167 A.2d at 888.

The difference between this case and *Krieger* is the definition of reservation contained in Howard County Code § 16.108(54), which requires a developer to assign the land "for a specified use, to be held by him or his assignees for that use and no other use to a future time." It will be recalled that § 16.113(b)(2) requires the owner to "reserve within a proposed subdivision such part(s) of the right-of-way for a new state road designated on the general plan," and further states that "[s]uch reservation shall be in the general location and to the right-of-way width specified by

the state." Although the County suggests that the reserved land could be farmed, such a use would not be for highway purposes: the clear language of the statute provides that reserved land may be used for "no other use" than that for which it is reserved.

In *Chadwick*, 286 Md. 1, 405 A.2d 241, we held that the Maryland-National Capital Park and Planning Commission unconstitutionally deprived landowners of property without just compensation because it compelled them to place land in public reservation for a period not to exceed three years. Although the land was exempt from taxes during this period, the statute in question specified that "any land so reserved [should not] be put to any use whatsoever, except upon written approval of the board," other than permission to "remov[e] weeds or trash from property so reserved .... " 286 Md. at 5, 405 A.2d at 243. We concluded that the "Commission's resolution placing appellees' land in reservation for a period up to three years stripped the landowners, for that extended period of time, of all reasonable use of their property and was tantamount to a 'taking' without compensation as the lower court declared." 286 Md. at 12, 405 A.2d at 247. Chief Judge Murphy said for the Court:

> "We construe the ordinance under which the Commission acted as not permitting the landowner to make, as a matter of right, any use of the property placed in reservation (other than to remove trash and weeds). We further construe the ordinance as not authorizing the planning board to permit, upon the landowner's application, any use of the reserved property which conflicts with the flat prohibition contained in the ordinance against grading the land, erecting any structures thereon, or removing trees, top soil or other cover. Restrictions of such totality upon the use of property placed in reservation *for a three-year period* bring this case within the principle, so well illustrated in *Pennsylvania Coal [Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) ], that a governmental restriction imposed on the use of land may be so

onerous as to constitute a taking which constitutionally requires the payment of just compensation." 286 Md. at 13, 405 A.2d at 247 (emphasis in original).

The Court further stated:

"The resolution does not merely circumscribe a beneficial use of the property; it inhibits all beneficial use for up to three years, without any guarantee that the property will be acquired in the future. That the Commission's resolution is tantamount to a taking is, we think, clearly buttressed by cases in other jurisdictions." 286 Md. at 15, 405 A.2d at 248.

We concluded the opinion by saying:

"The Commission, supported by a well-prepared amicus curiae brief filed by the Attorney General, urges that we apply the rationale of cases like *Headley v. City of Rochester*, 272 N.Y. 197, 5 N.E.2d 198 (1936), and *State v. Manders*, 2 Wis.2d 365, 86 N.W.2d 469 (1957), sustaining the constitutionality of so-called official map laws—statutes which establish the location of existing and planned streets and place restrictions on the issuance of permits to build structures in the bed of proposed roadways. These statutes restricting development in the bed of mapped streets contain provisions for variances to assure the landowner of a reasonable return on affected property, including the granting of a building permit to prevent substantial damage accruing to the owner where that course of action is required by justice and equity. Maryland's statute controlling development in mapped streets is similar to those involved in *Headley* and *Manders*. *See* Maryland Code (1957, 1978 Repl.Vol.) Art. 66B, § 6.01 *et seq.*[2]

---

**2.** Maryland Code (1957, 1983 Repl.Vol.) Art. 66B, § 6.01 provides for reservation of locations of mapped streets, etc., for future dedication or acquisition for public use. It is applicable when a planning commission has adopted the transportation element of the plan of the territory within its subdivision jurisdiction or of any major section or district thereof. It provides in relevant part:

"The facts of the present case clearly distinguish it from the cited cases involving the reservation of street locations. As in those cases, we recognize the need to promote intelligent planning by placing reasonable restrictions on the improvement of land scheduled to be acquired for public use. We do not, therefore, condemn as beyond the police power the enactment of reservation statutes which are reasonable in their application both as to duration and severity. Our holding today is a narrow one, limited to the facts before us. We conclude only that the Commission's resolution passed pursuant to § 50–31 of the County Code, placing appellees' land in reservation for up to three years, without any reasonable uses permitted as of right, was tantamount to a 'taking' in the constitutional sense." 286 Md. at 17–18, 405 A.2d at 249–50 (footnote omitted).

To similar effect see *Lomarch Corp. v. Mayor of Englewood,* 51 N.J. 108, 237 A.2d 881 (1968), involving a one-year reservation. *Compare Carl M. Freeman, Inc. v. St. Rds. Comm'n,* 252 Md. 319, 330, 250 A.2d 250 (1969), in which we held unconstitutional a Montgomery County statute which provided that "[a]ny area reclassified by a local or sectional

---

"In the resolution of adoption of a plat the local legislative body shall fix the period of time for which the street locations shown upon the plat shall be deemed reserved for future taking or acquisition for public use.... The commission may, at any time, negotiate for or secure from the owner or owners of any such lands releases of claims for damages or compensation for such reservations or agreements indemnifying the county or municipal corporation from such claims by others, which releases or agreements shall be binding upon the owner or owners executing the same and their successors in title.... At any time the local legislative body may, by resolution, abandon any reservation and shall certify any such abandonment to the said clerk of the circuit court."

Section 6.02 goes on to control development in the bed of mapped streets and the circumstances under which an owner may secure a permit for such development.

The statute is essentially unchanged from that appearing as Code (1957) Art. 66B, §§ 31 and 32, discussed for the Court by Chief Judge Brune in *Cong. School v. Roads Commission,* 218 Md. 236, 245, 146 A.2d 558 (1958).

or District plan map amendment sh[ould] exclude and be held to exclude any portion of the area l[ying] in the bed of a road, street, or alley, whether existing or proposed on a plan adopted by the Commission or other duly constituted public authority."

We come down to the issue in this case, which is whether the Howard County subdivision regulation requiring JJM to reserve land for a proposed State highway constitutes an exercise of the County's police power or a taking. If the regulation is determined to be a valid exercise of the police power, then JJM has no legal cause for complaint. If, on the other hand, the regulation is determined to be a taking of the property, the County has no right to require the reservation for the proposed highway.

D. Hagman, *Urban Planning and Land Development Control Law* § 140 (1975) defines the terms dedication and reservation:

> "Dedication ordinarily involves the conveyance of an interest in land by the fee owner to the public; usually to the local government having jurisdiction over the land. Reservation, on the other hand, involves no conveyance but restricts the right of the subdivider and others to use the land for anything but the restricted purpose." *Id.* at 259.

*See also* R. Anderson, *American Law of Zoning* § 23.25 (2d ed. 1977). Anderson comments in § 24.03:

> "The adoption of an official map, implemented by statutes prohibiting the improvement of areas depicted as streets, highways, drainage systems, or other public installations, raises constitutional questions which have troubled the courts as deeply as the more extensive controls imposed by zoning restrictions and subdivision regulations. While an official map, in the usual case, has less impact upon a landowner's free use of his tract than is true in the case of an ordinance which imposes restrictive zoning, or one which prohibits subdivision unless expensive improvements are installed, such a map may

wholly deny him the use of a small area. Attorneys react sharply to such a deprivation, and some courts have been similarly disturbed. The notion that a municipality can deny to a landowner the use of land marked on a map as a paper street seems, at first blush, an affront to constitutionally protected property rights.

\* \* \* \* \* \*

"The serious issue of constitutionality did not arise until official maps were given the additional effect of depriving an owner of mapped land of the right to develop it in any way which required a building permit. Given such effect, an official map became more than a mere mapping of future streets. It became a mapping which limited the landowner's right freely to improve the mapped portions of his property, and it lent credibility to the argument that such a deprivation was a taking of property for public use. The courts have expressed diverse views as to whether an official map which limits land use in this manner and to this extent is an unconstitutional taking of property." *Id.* at 173–75.

A number of scholars have written on problems similar to that in the case at bar. *See generally,* Brown, *Reservation of Highway and Street Rights-of-Way By Official Maps,* 66 W.Va.L.Rev. 73 (1964); Johnston, *Constitutionality of Subdivision Control Exactions: The Quest for a Rationale,* 52 Cornell L.Q. 871 (1967); Mandelker, *Planning the Freeway: Interim Controls in Highway Programs* 1964 Duke L.J. 439 (1964); Reps, *Control of Land Subdivision by Municipal Planning Boards,* 40 Cornell L.Q. 258 (1955); Reps and Smith, *Control of Urban Land Subdivision,* 14 Syracuse L.Rev. 405 (1963); Wells and Lallas, *Subdivision Land Dedication: Objectives and Objections,* 27 Stanford L.Rev. 419 (1975).

Professor Johnston states, "The transition in goals of subdivision control has necessitated reconsideration of its rationale. The observable progression has been from 'voluntariness,' to 'privilege,' to the police power." 52 Cornell

L.Q. at 876. Citing *Ridgefield Land Co. v. City of Detroit*, 241 Mich. 468, 472, 217 N.W. 58, 59 (1928), he says:

> "In upholding street width and location requirements imposed on a developer by the city of Detroit, the Supreme Court of Michigan stated that 'in theory at least, the owner of a subdivision voluntarily dedicates sufficient land for streets in return for the advantage and privilege of having his plat recorded.'" *Id.* at 877.

As to the "privilege" of recordation Professor Johnston states that "[c]itations of authority supporting the privilege rationale usually begin with *Ross v. Goodfellow,* [7 App. D.C. 1 (Ct.App.1895)]." In discussing that case he states:

> "The subdividers in *Ross* had contended that, even if the commissioners had the power to propose a deflection of Delaware Avenue, they were not authorized to condition plat approval upon the dedication of land for the proposed street. The court rejected this contention.
>
> > [I]t must be remembered that each owner has the undoubted right to lay off his land in any manner that he pleases, or not to subdivide it at all. He cannot be made to dedicate streets and avenues to the public. If public necessity demands part of his land for highways, it can be taken only by condemnation and payment of its value. But he has no corresponding right to have his plat of subdivision so made admitted to the records.
> >
> > In providing for public record Congress can accompany the privilege with conditions and limitations applicable alike to all persons. In providing for such record in the Act of 1888, Congress sought to subserve the public interest and convenience by requiring practical conformity in all subdivisions of land into squares, streets and avenues, with the general plan of the city as originally established, and this, regardless of the fact that it might, in some instances, practically coerce the dedication of streets to public use which would otherwise have to be paid for.

This recitation is unaccompanied by citation of authority. The opinion appears to rest solely on the conclusion that

the action of the commissioners was authorized by Congress, and that their exercise of this authority was not subject to judicial review. The crucial issue—whether the required dedication constituted a taking for which compensation is required by the fifth amendment—apparently was not raised by the subdividers. It is thus improper to cite *Ross* as authority for the proposition that compulsory dedication of streets as a condition of plat recordation is not prohibited by the fifth amendment." *Id.* at 883.

For the proposition that constitutionality was not raised he cites the court's statement on motion for rehearing where Chief Justice Alvey said for the court that *Ross* was not a case "in which is drawn in question the validity of a treaty or statute of or an authority exercised under the United States—conditions necessary to exist to entitle the party applying to writ of error to the Supreme Court of the United States." 7 App.D.C. at 15.

Professor Johnston indicated that *Ridgefield,* 241 Mich. 468, 217 N.W. 58, is significant "in the development of the 'privilege' rationale ...." *Id.* at 884. He further states:

"While conceding that existing streets could not be widened without payment for compensation, the court distinguished the situation under review.

Here the city is not trying to compel a dedication. It cannot compel the plaintiff to subdivide its property or to dedicate any part of it for streets. It can, however, impose any reasonable condition which must be complied with before the subdivision is accepted for record. In theory at least, the owner of a subdivision voluntarily dedicates sufficient land for streets in return for the advantage and privilege of having his plat recorded. Unless he does so, the law gives him no right to have it recorded.

This was followed by a supporting quotation from *Ross.*

"It should be noted that, since Michigan law permitted conveyance of subdivision lots by metes and bounds, recordation was not a legal necessity. Thus, application of the privilege rationale seems proper. Yet the court

was unwilling to rely solely upon the 'privilege' rationale. The exaction was upheld alternatively as a proper exercise of the police power." *Id.* at 885.

He further discusses that case:

"The opinion thus indicates that, when the reasonableness of subdivision control regulation is at issue, the ultimate determinant of validity should be neither voluntariness nor privilege, but the police power. This suggests two questions. *First,* why impose a reasonableness requirement where the owner is permitted to subdivide without recordation? On this matter, the opinion is silent. *Second,* if reasonableness must be a function of 'necessity,' what is the test and how is it applied? The court refers to a self-evident relationship between street width and public safety and indicates that this relationship justifies the exercise of the police power. But this begs the question. The relationship exists with respect both to existing streets and to proposed streets, but the opinion explicitly concedes that the police power does not justify the widening of existing streets without compensating those whose land is taken for that purpose. The opinion furnishes no explanation for the distinction. Nevertheless, subsequent to *Ridgefield Land Co.,* the test of validity of subdivision control regulations has often been said to depend upon whether or not they constitute a 'reasonable exercise of the police power.' In the formulation and application of tests of reasonableness, however, the courts have expressed divergent views." *Id.* at 886.

*Ayers v. City Council of Los Angeles,* 34 Cal.2d 31, 207 P.2d 1 (1949), is an oft-cited case in matters of this kind. In fact, Professor Hagman at 254 refers to it as "the leading case on subdivision exactions ...." Professor Johnston describes the case as one

"where the subdivider owned thirteen acres of land in the shape of a long, narrow right triangle, bounded on two sides by thoroughfares, which intersected at the apex. (The tract was less than 500 feet wide at the base and

extended some 2,400 feet to the apex.) The owner proposed to subdivide this tract into ten residential lots, one business lot, and one lot for religious use. A nearby cross street, sixty feet in width, would have bisected the tract if extended through the developer's land. On his proposed plat, the subdivider dedicated a strip of land sixty feet in width for the extension of this street, with the business and religious use lots abutting it on either side. The planning commission, however, conditioned plat approval upon the dedication of a strip eighty feet in width for the extension of this street. The subdivider, challenging the reasonableness of the condition, brought an action of mandamus to compel recordation of his plat." *Id.* at 889.

The court in *Ayres* stated:

"[T]he proceeding here involved is not one in eminent domain nor is the city seeking to exercise that power. It is the petitioner who is seeking to acquire the advantages of lot subdivision and upon him rests the duty of compliance with reasonable conditions for design, dedication, improvement and restrictive use of the land so as to conform to the safety and general welfare of the lot owners in the subdivision and of the public. The well-considered observations in *Mansfield & Swett v. Town of West Orange,* 120 N.J.L. 145 [198 A. 225], also involving a subdivision proceeding, are pertinent in this connection. The court there recognized the distinction between the exercise of the sovereign power of eminent domain and the noncompensatory nature of reasonable restrictions in respect to private interests when they must yield to the good of the community. That these general principles apply in subdivision map proceedings is also demonstrated in the cases of *Ridgefield Land Co. v. City of Detroit,* 241 Mich. 468 [217 N.W. 58], and *Newton v. American Sec. Co.,* 201 Ark. 943, 948 [148 S.W.2d 311], where the distinction was made between the exercise of authority in such proceedings and the exercise of the power of eminent domain. In each of those cases it was held that the

requirement for the dedication of land to the widening of existing streets was not a compulsory taking for public use; but that where it is a condition reasonably related to increased traffic and other needs of the proposed subdivision it is voluntary in theory and not contrary to constitutional concepts." 34 Cal.2d at 42, 207 P.2d 1.

Professor Johnston further comments relative to that case:

"*Ayres* has been followed in a number of subsequent cases concerning compulsory dedication of land for streets. Unfortunately, it is usually cited to support the flat proposition that subdivision control requirements for street widening are valid conditions to plat approval. Such citations fail to consider the limited facts of *Ayres:* the regulations had actually benefited the subdivider by reducing his costs." *Id.* at 893–94.

Relative to compulsory dedication for educational and recreational uses, Professor Johnston comments, "[S]o long as the period of reservation is not unreasonably long and the owner is not denied all beneficial use of his property, this type of statute could be upheld by analogy to street-mapping or interim-zoning ordinances." *Id.* at 906. It is significant in the context of this case that by way of footnote he states:

"Safety-valve provisions could include assurance of full utilization of the land for any purpose other than buildings, plus the familiar variance remedy administered by boards of adjustment, utilizing either the zoning ('unnecessary hardship') standard or the more liberal street-mapping ('reasonable return') standard. Both are provided for in the New Jersey enabling act." *Id.* at 906, n. 157.

Messrs. Reps and Smith comment:

"[F]undamental differences do exist between the ... areas [of subdivision regulation and zoning]. While zoning involves no more than negative prohibitions on certain *uses* of the owner's property, subdivision regulation often makes positive exactions of the owner. It may require him to construct streets or sewers, to convey a portion of

his land to the municipality for public use, or to pay the equivalent of such construction or dedication in cash. It is submitted that this difference necessitates a more specific test of constitutionality, i.e., the legislation should not only be substantially related to the public health, safety, morals, or general welfare, *but, insofar as dedications, activities, and expenditures are positively required of the subdivider these requirements should be reasonably related to the subdivision in question and should concern types of improvement for which municipalities have generally been conceded the power to levy special taxes or assessments."* 14 Syracuse L.Rev. at 407 (emphasis in original).

*Nichols' The Law of Eminent Domain* § 1.42[2] (Rev. 3d ed. by J. Sackman, 1973 Recompilation by P. Rohan 1981) states:

"It has been held ... that where the need for a road is substantially generated by public traffic demands, rather than by the proposed development, eminent domain must be used rather than the police power.

"One of the tests requires the establishment of a reasonable relationship between the approval of the subdivision and the municipality's need for land." *Id.* at 1–186–88.

The latter work goes on in § 1.42[9] to state:

"The mapping out of streets upon vacant land near large and growing cities has often been provided for, so that a systematic plan for the gradual enlargement of the city can be followed. A mere provision that after the recording of the map no streets shall be laid out which are not in accordance therewith is unobjectionable; but it is sometimes enacted that if the owner builds upon the land marked out for a street, when the street is actually laid out he shall receive no compensation for his building. As the plotting of a street under such a statute substantially amounts to depriving the owner of the use of the land within the limits of the projected street for any but temporary purposes, it is generally held that such stat-

utes are unconstitutional unless the owner is given compensation for his loss." *Id.* at 1–277–79.

*Ventures in Property I v. City of Wichita,* 225 Kan. 698, 594 P.2d 671 (1979), was an inverse condemnation action virtually identical on its facts to the case at bar. It was there claimed that the City of Wichita took land by inverse condemnation when it declined to approve platting of land in contemplation of the building of a future highway sometimes referred to as the Northeast Circumferential. The court said:

"Preliminary to our discussion we note the Northeast Circumferential project remains inactive to this date. The preliminary field surveys have not been initiated, and planning has .gone no further than the initial highway corridor. No right-of-way plans have been made and no facility has been constructed. Nor is the Northeast Circumferential one of the projects proposed for funding in the Secretary of Transportation's current plans through 1984, as approved by the Highway Advisory Committee on May 14, 1976. In short the project was and currently remains in a hold and study status." *Id.* at 702–03, 594 P.2d 671.

It further stated, "On the admitted facts the matter before the Wichita City Commission was how to reserve the highway corridor from development so that future condemnation would be less costly, and so that development would not jeopardize the location of the corridor for highway purposes." *Id.* at 710, 594 P.2d 671. After extensive discussion of the authorities, the court said:

"Confining our decision to the factual situation presented, we hold where the proposed platting of land by an owner for residential development is approved by the governing body of a city in accordance with previously approved zoning regulations, subject to the sole restriction that a portion of the land in a defined highway corridor within the proposed plat be reserved in its undeveloped state for possible highway purposes at some indefinite date in the distant future, the governing body

has taken property from the landowner for which it is required to respond in damages by inverse condemnation." *Id.* at 713–14, 594 P.2d 671.

*Brazer v. Borough of Mountainside,* 55 N.J. 456, 262 A.2d 857 (1970), also presented facts similar to that in the case at bar. As the court put it:

"Plaintiffs' application for approval of a subdivision of their land in the Borough of Mountainside was granted by the borough Planning Board, but only on condition that they reserve, and show on their subdivision plat, a right-of-way across the property for the future extension, as shown on the borough's master plan, of an existing street which now dead-ends at plaintiffs' sideline. Any building permit was directed to be denied until this was done." *Id.* at 459, 262 A.2d 857.

The court further stated:

"What was obviously intended is that plaintiffs would be required to offer irrevocably to dedicate this 50 foot strip, which amounts to about 20% of the area of the rear half of the property, for construction of the proposed street sometime in the future, without compensation either for the loss of its use in the meantime or for its value at any time." *Id.* at 462, 262 A.2d 857.

The case was considered "on the hypothesis ... that the proposed subdivision did not make reservation of the right-of-way necessary because there would be street access by use of the dead-end." *Id.* at 463, 262 A.2d 857. After discussing a number of cases, the court said:

"[T]he plain rationale of these cases is that, as was said in the context of off-site improvements in *Longridge Builders, Inc. v. Planning Board of Princeton Township,* 52 N.J. 348, 350 [, 245 A.2d 336] (1968), a subdivider may be compelled only to assume a cost 'which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision... See *Lake Intervale Homes, Inc. v. Parsippany-Troy Hills,* 28 N.J. 423, 441–443 [, 147 A.2d 28] (1958).' Beyond that, Planning Board imposi-

tions, although purportedly authorized by the Planning Act or the local ordinance, amount to impermissible exactions." *Id.* at 465–66, 262 A.2d 857.

The court held:

"So under the hypothesis that the proposed extension of Camelot Court through plaintiffs' property is not necessary or rationally related to the subdivision, because they have physical access by and are legally entitled to use the dead-end thereof, defendants may not condition subdivision approval upon a reservation of the right-of-way through the property for the proposed street extension and the lower tribunals were in error in holding to the contrary. To the same general effect elsewhere, see *People ex rel. Exchange National Bank v. Lake Forest,* 40 *Ill.*2d 281, 239 *N.E.*2d 819 (1968); but *cf. Ayres v. City Council of City of Los Angeles,* 34 *Cal.*2d 31, 207 *P.*2d 1, 11 *A.L.R.*2d 503 (1949)." *Id.* at 468, 262 A.2d 857.

A number of cases support the proposition that there must be a reasonable nexus between the exaction and the subdivision. Some of the cases arise in litigation concerning requirements that land be set aside for parks or schools. Whether streets, highways, parks or schools are involved, however, the principle is the same. The cases include *Aunt Hack Ridge Estates, Inc. v. Planning Commission,* 160 Conn. 109, 117–18, 273 A.2d 880 (1970) (park); *Wald Corp. v. Metropolitan Dade County,* 338 So.2d 863 (Fla.Dist.Ct. App.1976), *cert. denied,* 348 So.2d 955 (Fla.1977) (drainage canal); *Pioneer Tr. & Sav. Bk. v. Mt. Prospect,* 22 Ill.2d 375, 380, 176 N.E.2d 799 (1961) (school); *Schwing v. City of Baton Rouge,* 249 So.2d 304, 310 (La.App.), *cert. denied,* 259 La. 770, 252 So.2d 667 (1971) (street); *Collis v. City of Bloomington,* 310 Minn. 5, 17–18, 246 N.W.2d 19 (1976) (park); *Home Bldrs. Ass'n, etc. v. City of Kansas City,* 555 S.W.2d 832 (Mo.1977) (en banc) (park); *Billings Properties, Inc. v. Yellowstone County,* 144 Mont. 25, 33, 35, 394 P.2d 182 (1964) (park); *Simpson v. City of North Platte,* 206 Neb. 240, 245–46, 292 N.W.2d 297 (1980) (street); *Robbins Auto Parts, Inc. v. City of Taconia,* 117 N.H. 235, 236, 371

A.2d 1167 (1977) (highway); *Frank Ansuini, Inc. v. City of Cranston*, 107 R.I. 63, 69, 264 A.2d 910 (1970) (park); *Bd. Sup. James City County v. Rowe*, 216 Va. 128, 138–40, 216 S.E.2d 199 (1975) (street); *Jordan v. Menomonee Falls*, 28 Wis.2d 608, 617, 137 N.W.2d 442 (1965) (park and school); *but see Jenad, Inc. v. Village of Scarsdale*, 18 N.Y.2d 78, 218 N.E.2d 673 (1966).

■ We bear in mind in this case the "fine line" distinction observed by Justice Holmes for the Court in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922): "The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Mahon*, 260 U.S. at 415, 43 S.Ct. at 160. *Cf. Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926) ("The line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions.").

The trial judge in the case at bar focused upon the provision of Howard County Code, § 16.108(54), which restricts reserved land "for that use and no other use to a future time." He "construe[d] the subject provision as not permitting the landowner to make, as a matter of right, any effective use of the property placed in reservation." Further, he pointed out that the duration of the reservation is unlimited and that the State is not required by law to acquire the property placed in reservation. We observe that a reservation, which has many positive features as noted in *Krieger*, 224 Md. 320, 167 A.2d 885, and *Chadwick*, 286 Md. 1, 405 A.2d 241, does not necessarily have to be as restrictive as the provision here. It was not, for example, so restrictive in *Krieger*. Moreover, the statute here is in sharp contrast with the purpose of Code (1957, 1983 Repl. Vol.) Art. 66B, §§ 6.01–.03, to which Chief Judge Murphy referred for the Court in *Chadwick*, 286 Md. at 18, 405 A.2d at 249–50.

282

 We hold that in order to exact from a developer a setting aside of land for highway purposes there must be a reasonable nexus between the exaction and the proposed subdivision. No such nexus has been shown here. In this case the landowner has been deprived of all use of his land. Hence, we shall affirm the judgment of the trial court.

JUDGMENT AFFIRMED; HOWARD COUNTY TO PAY THE COSTS.