*William A. Dabbs, Jr., et al. v. Anne Arundel County*, No. 23, September Term, 2017. Opinion by Harrell, J.

**TAKINGS – RATIONAL NEXUS / ROUGH PROPORTIONALITY SCRUTINY *NOLLAN* AND *DOLAN* – APPLICABILITY – LEGISLATIVELY-IMPOSED DEVELOPMENT IMPACT FEES**

*Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309 (1994), held that a unit of government may not condition the approval of a land-use permit on the property owner's/applicant's relinquishment of a portion of his property unless there is a nexus and rough proportionality between the government's demand and the effects of the proposed land development or use. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 133 S. Ct. 2586 (2013), expanded *Nollan* and *Dolan* to apply to a monetary exaction for mitigation as a condition for issuing a land-use permit to enable development of an individual property. The legislation at issue in the present case, Subtitle 2 of Title 11 of Article 17 of the Anne Arundel County Code, involves a legislatively-imposed development impact fee. The impact fee ordinance imposes predetermined impact fees, based on a specific monetary schedule, and applies to any person wishing to develop property within the development district. Such impact fees imposed by legislation applicable on an area-wide basis are *not* subject to *Nollan* and *Dolan* scrutiny.

**STATUTORY APPLICABILITY – VESTING – RETROSPECTIVE APPLICATION – ANNE ARUNDEL COUNTY CODE**

Generally, "[a] change in procedure or in a remedy, whether administrative or judicial, *which does not modify substantive rights*, is ordinarily applied to pending matters as well as to all remedial actions taking place after the effective date of the change." *State Admin. Bd. of Election Laws v. Bd. of Sup'rs of Elections of Baltimore City*, 342 Md. 586, 601, 679 A.2d 96, 103 (1996) (emphasis added). Anne Arundel County Bill No. 27-07 does not work a substantive change in policy interfering with any vested rights of the *Dabbs* Class of litigants seeking refunds of impact fees not expended or encumbered lawfully within six fiscal years following their collection. Specifically, the definition of encumbrance, utilized by Anne Arundel County when assessing the amount of impact fees available for refund, before the enactment of Bill No. 27-07, conformed to generally accepted accounting principles. Moreover, the Court determined previously, in *Anne Arundel County v. Halle Development*, 408 Md. 539, 559 n.7, 560, 971 A.2d 226 n.7 (2009), that similarly situated owners' rights in any specific refund award were not vested. Bill No. 27-07 did not interfere with any vested rights of the *Dabbs* Class.

**STATUTORY APPLICABILITY – PROSPECTIVE REPEAL – VESTED RIGHTS TO RELIEF – ANNE ARUNDEL COUNTY CODE**

Rights of a purely statutory origin, untraceable to the common law, "are wiped out when the statutory provision creating them is repealed, regardless of the time of their accrual, unless the rights concerned are vested." *Selig v. State Highway Admin.*, 383 Md. 655, 676, 861 A.2d 710, 723 (2004). The effective date of the repeal of the refund provision of § 17-11-210 (1 January 2009) of the Anne Arundel County Code occurred well before any impact fees collected through 2003 became ripe for a refund claim, e.g., on or about 29 August 2009. Thus, the *Dabbs* Class' claims for refunds of impact fees collected in FY 2003 were not vested and the repeal of § 17-11-210 barred any refund claims.

Circuit Court for Anne Arundel County
Case No. 02-C-11-165251
Argued: November 3, 2017

IN THE COURT OF APPEALS
OF MARYLAND

No. 23

September Term, 2017

_____

WILLIAM A. DABBS, JR., et al.

v.

ANNE ARUNDEL COUNTY

_____

Adkins,
McDonald,
Watts,
Hotten,
Getty,
Harrell, Glenn T., Jr.,
    (Senior Judge, Specially Assigned)
Cathell, Dale R.,
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Harrell, J.

_____

Filed: April 10, 2018

"[D]espite reams of papers being filed, it is[, still to this day,] [] difficult to tease out [precisely what the *Dabbs* Class'] specific contentions are except for the assertion that they should receive a refund of some unspecified amount."

Memorandum Opinion (at 14), Senior Judge Dennis Sweeney (ret.), *Dabbs, et al. v. Anne Arundel County*, Circuit Court for Anne Arundel County, Case No. 02-C-11-165251 (14 January 2016).

This is the latest installment of a litigation saga (although perhaps we are nearing its end) traveling two quite kindred paths over more than fifteen years, (*Halle, et al. v. Anne Arundel County* ("*Halle*") and *Dabbs, et al. v. Anne Arundel County* ("*Dabbs*")) in Maryland's courts. Pursuant to the power vested in the government of Anne Arundel County, Maryland ("the County") through 1986 Md. Laws, ch. 350, the County imposed road and school impact fees according to County districts beginning in 1987.[1] These fees were paid usually by land developers and builders.[2] Those who paid impact fees (like the

---

[1] Subtitle 2 of Title 11 of Article 17 of the Anne Arundel County Code (the "Impact Fee Ordinance") explains that its adoption was done

> for the purpose of promoting the health, safety, and general welfare of the residents of the County by: (1) requiring all new development to pay its proportionate fair share of the costs for land, capital facilities, and other expenses necessary to accommodate development impacts on public school, transportation, and public safety facilities. . . .

[2] Section 17-11-208 specifies that there "are three separate special funds, the Anne Arundel County Transportation Impact Fee Special Fund, the Anne Arundel County School Impact Fee Special Fund, and the Anne Arundel County Public Safety Impact Fee Special Fund." Moreover, § 17-11-209(d) announces also that "[f]unds collected from development impact fees shall be used for capital improvements within the *development*

*Dabbs* Class) might become eligible, under certain circumstances, for refunds of those fees.

*See* Anne Arundel County Code § 17-11-210.[3] Refunds were contingent upon the County's

---

*impact fee district* from which they are collected, so as to reasonably benefit the property against which the fees were charged." (emphasis added).

[3] During Fiscal Years (FYs) 1997-2003 (the years in question here), § 17-11-210 provided:

    (a) Notice of refund availability.  If fees collected in any district during a fiscal year have not been expended or encumbered by the end of the sixth fiscal year following collection, the Office of Finance shall give notice of the availability of a refund of the fees and refund the fees as provided in this section.

    (b) Publication of notice.  Within 60 days from the end of a fiscal year during which fees become available for refund, the Controller shall cause to be published once a week for two successive weeks in one or more newspapers that have a general circulation in the County, a notice that development impact fees collected within a particular district for a preceding fiscal year are available for refund on application by the current owner of the property for which the fee was originally paid.  The notice shall set forth the time and manner for making application for the refund.

    (c) Refund application deadline.  An eligible property owner shall file an application for a refund within 60 days of the last publication of notice.  On proper application and demonstration that the fee was paid, the Controller shall refund the fees to the property owner with interest at the rate of 5 [percent] per year.

    (d) Refund on pro rata basis.  If only a portion of the fees collected in a district during a fiscal year have been expended or encumbered, the portion not expended or encumbered shall be made available for refund on a pro rata basis to property owners.  Each eligible property owner who has properly applied for a refund shall receive a refund in an amount equal to the portion of the original fee that way not expended or encumbered.

    (e) Extension.  The Planning and Zoning Officer may extend for up to three years the date at which the funds must be expended are encumbered under subsection (a).  An extension shall be made only on a written finding that within a three-year period certain capital improvements are planned to be constructed that will be of direct benefit to the property against which the fees were charged.

Two bills, at the heart of this case, amended the Impact Fee Ordinance: Bill No. 27-07 (effective 22 May 2007, codifying the county's procedures for calculating and recording

2

failure to utilize or encumber within a specified time the collected fees for present or future eligible capital improvements, i.e., projects for the "expansion of the capacity of public schools, roads, and public safety facilities and not for replacement, maintenance, or operations." § 17-11-209(a).[4] The *Dabbs* Class' claims are a demand for refunds of an unspecified amount of impact fees collected by the County between fiscal years (FY) 1997-2003.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The *Halle* Chronicles.

A total of 12 reported and unreported opinions, orders, and memorandum opinions have been issued to date collectively by this Court, the Court of Special Appeals, and the Circuit Court for Anne Arundel County, in the *Halle* litigation (the older sibling to the present case).[5] The core contention in *Halle* is relevant to the present case. In 2001, the *Halle* Class asserted that they were entitled to refunds of impact fees collected during FY 1988–1996 that were expended on what was ultimately determined to be ineligible capital improvements.[6] In *Halle*, the circuit court, on 15 December 2006, found $4,719,359 in

---

capital expenditures and encumbrances), and Bill No. 71-08 (effective 1 January 2009, amending the Ordinance, to remove prospectively the refund provision provided in § 17-11-210).

[4] Unless specified otherwise, all code references herein are to the Anne Arundel County Code.

[5] Many arguments asserted by the *Dabbs* Class were decided in *Halle*. We shall note and elaborate on prior holdings in *Halle* as they are intertwined with the certiorari questions before us.

[6] For a full history of *Halle*, *see Anne Arundel County v. Halle Dev., Inc.*, 408 Md. 539, 543–51, 971 A.2d 214, 216–21 (2009); *Halle Development v. Anne Arundel County*, No. 1299, Sept. Term, 2016 at 1-10 (Md. Ct. Spec. App. Nov. 22, 2017); *Dabbs v. Anne Arundel County*, 232 Md. App. 314, 321–28, 157 A.3d 381, 385–89 (2017), *cert. granted*

refunds were "due to the current owners of specified fee paying properties," plus five-percent interest from the date of the payment of each initial fee.[7] The circuit court based its ruling in favor of the payors on its determination that the § 17-11-210(e) extension[8] decisions made by the County's Planning and Zoning Officer (PZO) were invalid. The *Halle* Class and the County cross-appealed. The County, on appeal,

> argued that the circuit court erred by refusing to permit the County to count the encumbrances in calculating the refund. In their cross-appeal, the [*Halle* Class] contended that (1) the circuit court improperly calculated the amount of impact fees available for refund by excluding funds that were spent on ineligible development projects; and (2) counsel for the property owners were entitled to the 40 [percent] contingency fee provided by their fee agreement with the named class representatives.

*Halle Dev., Inc. v. Anne Arundel County*, No. 1299, Sept. Term, 2016 at 6 (Md. Ct. Spec. App. Nov. 22, 2017).[9] The intermediate appellate court, in 2008, held, *inter alia* in an

---

*Dabbs v. Anne Arundel County*, 454 Md. 677, 165 A.3d 473 (2017); *Halle Development v. Anne Arundel County*, No. 2552, Sept. Term 2006 at 1-8 (Md. Ct. Spec. App. Feb. 7, 2008).

[7] Indeed,
[t]he Circuit Court determined that because (1) $4,719,359 in impact fees collected from property owners were not thereafter timely paid or encumbered for capital improvements within the applicable district, and (2) the period to make capital improvements was not properly extended, the Owners were entitled to refunds.
*Halle*, 408 Md. at 543, 971 A.2d at 216 (footnote omitted).

[8] *See* § 17-11-210(e).

[9] This opinion includes references to unreported opinions in the *Halle* litigation, in which those litigants invoked many claims that are nearly identical to those posed in the *Dabbs* litigation, although different sets of class property owners and developers and a different stretch of fiscal years are involved in each line of cases. We may cite here or, in one instance, refer to persuasive reasoning, as appropriate, in certain of the *Halle* rulings because of their relevance and inextricable intertwinement with the *Dabbs* Class' contentions and factual background. We do so under "the doctrine of . . . collateral estoppel." Md. Rule 1-104(b); *Corby v. McCarthy*, 154 Md. App. 446, 481, 840 A.2d 188, 208 (2003).

4

Collateral estoppel provides that, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Cosby v. Dep't of Human Re*s., 425 Md. 629, 639, 42 A.3d 596 (2012); *see also Rourke v. Amchem Products, Inc*., 384 Md. 329, 359, 863 A.2d 926, 944 (2004) (quoting *re Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547, 555 A.2d 502, 503 (1989) ("The functions of this doctrine, and the allied doctrine of *res judicata*, are to avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions.").

Four questions must be answered affirmatively before collateral estoppel may be apt to the situation: (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question?; (2) Was there a final judgment on the merits?; (3) *Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?*; and, (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue? *Colandrea v. Wilde Lake Cmty. Assoc.*, 361 Md. 371, 391, 761 A.2d 899, 909 (2000) (quoting *Washington Suburban Sanitary Comm'n v. TKU Assocs*., 281 Md. 1, 18–19, 376 A.2d 505, 514 (1977)). Elaborating on the third question – mutuality– we explained in *Garrity v. Maryland State Bd. of Plumbing*, 447 Md. 359, 368–69, 135 A.3d 452, 458–59 (2016), that

> Traditionally, collateral estoppel contemplates a "mutuality of parties," meaning that an issue that was litigated and determined in one suit will have preclusive effect in a second suit when the parties are the same as, or in privity with, those who participated in the first litigation. The mutuality requirement has been relaxed, however, so long as the other elements of collateral estoppel are satisfied. *See Rourke*[, 384 Md. at 349, 863 A.2d at 938 (2004)]. If either the defendant or the plaintiff in the second proceeding was not a party to the first proceeding, we refer to that application of collateral estoppel as "non-mutual." *Id*. at 341 []. Mutual and non-mutual collateral estoppel are further characterized as either "defensive" or "offensive": estoppel is "defensive" if applied by a defendant and "offensive" if invoked by a plaintiff. *See Shader v. Hampton Improvement Ass'n*, 443 Md. 148, 162–63, 115 A.3d 185[, 193] (2015).

The species of collateral estoppel that is apt here is "defensive non-mutual collateral estoppel," which seeks to prevent a plaintiff from re[-]litigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different party." *Rourke*, 384 Md. at 341, 863 A.2d at 933 (2004). We have recognized defensive non-mutual collateral estoppel where the party bound by the existing judgment had a full and fair opportunity to litigate the issues in question, even in a subsequent proceeding involving a different party. *See Pat Perusse Realty v. Lingo*, 249 Md. 33, 44, 238 A.2d 100, 107 (1968). Thus, although there are two different sets of plaintiffs (albeit similar in standing, the confluence of counsel, and many nearly identical claims), the defendant, i.e., the County, was the same

5

unreported opinion, that the circuit court erred in its formulation of the mathematical formula used to calculate that $4,719,359 in refunds were due. The County was entitled, in fact, to count impact fee encumbrances[10] when determining impact fees available for refund. *Halle Development v. Anne Arundel County*, No. 2552, Sept. Term, 2006 at 8-9 (Md. Ct. Spec. App. May. 5, 2008) (the appellate court granted a motion for reconsideration to clarify its 7 February 2008 remand instruction); *Halle Development v. Anne Arundel County*, No. 2552, Sept. Term, 2006 at 52 (Md. Ct. Spec. App. Feb. 7, 2008) (the intermediate appellate court found that the circuit court erred by refusing to allow the County to count impact fee encumbrances in determining the amount of impact fee refunds to which Owners are entitled under § 17-11-210(b)). The intermediate appellate court, on remand, instructed the circuit court to recalculate appropriately the refunds with consideration given to the encumbered impact fees. *See id.* The County sought successfully a writ of certiorari from this Court to review that judgment. We affirmed, on 6 May 2009,

defendant in both streams of litigation. *Halle* decided, with finality, many, if not most, of the claims asserted by the *Dabbs* Class. We believe also that the *Dabbs* class has had a full and fair adjudication of their issues.

In point of fact, the only question or argument in this case where we find the reasoning or conclusions of an unreported opinion in *Halle* persuasive is in our analysis of the argument that Bill No. 27-07 (*see infra* II.a.) should not be given its intended retrospective effect because the *Dabbs* Class members' rights to refunds had vested before the effective date of the legislation. Even there, this Court's 2009 reported opinion in *Anne Arundel County v. Halle Development*, 408 Md. 539, 559 n.7, 560, 971 A.2d 226 n.7 (2009), addressed virtually the same question, although Bill No. 27-07, which was law at that time, was not mentioned specifically by the parties in the briefing and argument or by the Court in its opinion.

[10] § 17-11-201(2) defines encumbrance as a legal commitment for the expenditure of funds, chargeable against the applicable appropriation for the expenditure, that is documented by a contract or purchase order.

the intermediate appellate court regarding its decision as to the encumbrances, and directed a remand to the circuit court to calculate available impact fee refunds. *See Anne Arundel County v. Halle Dev., Inc.*, 408 Md. 539, 971 A.2d 214 (2009).

On 25 March 2011, the circuit court reduced the refunds for which the payors were eligible from $4,719,359 to $1,342,360, plus interest. The *Halle* Class, in response, filed a petition for a writ of certiorari with this Court. We denied the *Halle* Class' attempt to pole-vault over review by the intermediate appellate court. The *Halle* Class appealed then to the intermediate appellate court. In a 29 July 2013 unreported opinion, the Court of Special Appeals affirmed the circuit court's 25 March 2011 order. The *Halle* Class petitioned again for a writ of certiorari. We denied that petition also. The circuit court awarded, on remand on 13 May 2014, counsel fees in the amount of 39 percent of the $1,342,360 in refunds, plus five-percent interest on each refund, and, on 8 August 2016, issued its final judgment. The owners appealed to the intermediate appellate court, which, in an unreported opinion on 22 November 2017, affirmed the circuit court's 8 August 2016 order, explaining, "in prior opinions, [the intermediate appellate court and this Court] have already addressed all but one[11] of the arguments raised by the [*Halle* Class]." *Halle Development v. Anne Arundel County*, No. 1299, Sept. Term, 2016 at 1 (Md. Ct. Spec. App. Nov. 22, 2017).[12]

---

[11] This issue is irrelevant to the present appeal.

[12] The *Halle* class filed, once again, a petition for writ of certiorari to this Court following the intermediate appellate court's 22 November 2017 decision. The Court denied the petition on 26 March 2018. *See Halle Development v. Anne Arundel Co.*, Pet. Docket No. 444, denied 26 March 2018.

## II.    The *Dabbs* trilogy.

We adopt, supplementing as needed, the intermediate appellate court's recitation of the procedural posture of this case as rendered in *Dabbs v. Anne Arundel County*, 232 Md. App. 314, 328–31, 157 A.3d 381, 389–91 (2017), *cert. granted Dabbs v. Anne Arundel County*, 454 Md. 677, 165 A.3d 473 (2017):

> In the present case, involving impact fees collected in FYs 1997– 2002, [the *Dabbs* Class] sought refunds on the ground that the impact fees were not expended or encumbered in a timely manner under § 17–11–210(b). [The *Dabbs* Class] also argued that the amendments to the Impact Fee Ordinance in Bill No. 27–07 and Bill No. 71–08 unconstitutionally interfered with their vested rights in refunds.  After hearing from the parties, [the circuit court entered, ultimately, a declaratory judgment in favor of the County as to all issues raised in the proceeding.] [T]he circuit court ruled that the County had applied the Impact Fee Ordinance as required by this Court's 2008 opinion and found that there are no impact fees available for refund under § 17–11–210.  Further, the circuit court rejected [the *Dabbs* Class'] constitutional and state law challenges to the Impact Fee Ordinance, finding that most of the challenges had already been resolved against the class plaintiffs in *Halle*.
>
> More specifically, the circuit court found that the County prepared the six FY charts in the format approved by the *Halle* courts, properly comparing the amount of impact fees collected in each FY and district under review to the amount of impact fees expended (disbursed) and encumbered as of the end of the sixth FY following the FY of collection.  Kurt Svendsen, the County's Assistant Budget Officer, who had been employed by the County since September 1, 1997, was responsible for (a) the preparation of the County's Capital Budget portion of the Annual Budget and Appropriation Ordinance, and (b) the monitoring of encumbrances and expenditures recorded in connection with appropriations for capital projects.  Because Svendsen monitored expenditures and encumbrances recorded against appropriations of capital projects on an almost daily basis, he was delegated the responsibility for conducting the six FY test under § 17–1–210(b).
>
> In the present case, the County prepared six FY charts for FYs 1997– 2002 in the same manner as the charts prepared in *Halle* for FYs 1988–2002, but also included impact fee expenditures on temporary classrooms.  The charts indicated that all impact fees collected in FYs 1997–2002 were expended or encumbered within six FYs following the FY of collection and, thus, no impact fees collected in these FYs were available for refund.

8

Lastly, the circuit court found that, in applying the six FY test, the County properly interpreted the term "impact fees encumbered" in § 17–11–210(b) to mean:

> (1) the amount of impact fees collected in a district account in a FY which have not been expended on June 30 of the sixth FY following the FY of collection, for which there is
>
> (2) as of the same date, an encumbrance (purchase order) on an impact fee eligible capital project in the district.

According to the circuit court, this definition is the only logical one based on [generally accepted accounting principles (GAAP)], the applicable provisions of the County Charter, and Annual Budget and Appropriation Ordinances. Under GAAP, an appropriation states the legal authority to spend or otherwise commit a government's resources. *See* Stephen Gauthier, *Governmental Accounting Auditing and Financial Reporting* at 305 (Government Finance Officers Ass'n 2001). Meanwhile, § 715(a) of the County Charter provides that County officials and employees may not spend or commit funds in excess of appropriations, and § 17–11–201(2) defines an encumbrance as "a legal commitment for the expenditure of funds, chargeable against the applicable appropriation for the expenditure, that is documented by a contract or purchase order." Thus, the court concluded that when determining the amount of "impact fees encumbered," the County was correct in comparing the amount of unexpended impact fees in the district account at the end of the relevant FY to the encumbrances entered in relation to capital projects in the district that have been determined by the [Planning and Zoning Office] to be eligible in the district.

As pertinent to the certiorari questions for which we granted the petition in this case, the intermediate appellate court – in reliance on *Waters Landing, Ltd. P'ship v. Montgomery Cnty.*, 337 Md. 15, 650 A.2d 712 (1994)[13] – held unfounded the *Dabbs* Class' arguments that the County's Impact Fee Ordinance is subject to the "rational nexus/rough

---

[13] *Waters Landing, Ltd. P'ship v. Montgomery Cnty.*, 337 Md. 15, 40, 650 A.2d 712, 724 (1994), held that the rough proportionality test did not apply to a "development impact tax [imposed] by legislative enactment, not by adjudication."

proportionality test" of *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309 (1994), and

*Nollan v. California Coastal Comm'n*, 483 U.S. 825, 837, 107 S. Ct. 3141 (1987).[14]

The intermediate appellate court held, moreover, that Bill No. 27-07 had legitimate retrospective applicability. The court, although professing not to be bound by the law of the case doctrine,[15] explained it was unable to reach a different conclusion in this regard than that reached in its 2008, 2011, and 2013 *Halle* opinions and this Court's 2009 *Halle* opinion. Specifically, given the close identity between the *Halle* Class' assertions and many of those advanced in the *Dabbs* Class action, the court "fail[ed] to see how [it could] reach a different conclusion." *Dabbs*, 232 Md. App. at 336, 157 A.3d at 394.

The court held valid also the prospective application of Bill No. 71-08, reasoning that "the repeal of a statute creating a right purely of statutory origin, such as [the right to a refund via] § 17–11–210, wipes out the right unless [it] is vested." *Dabbs*, 232 Md. App.

---

[14] *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309 (1994), held that "a unit of government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 599, 133 S. Ct. 2586, 2591 (2013).

[15] The law of the case doctrine operates to bar litigants from raising arguments on questions that have been decided previously or could have been decided in that case. *See Reier v. State Dept. of Assessments & Taxation*, 397 Md. 2, 20–22, 915 A.2d 970, 981–82 (2007). The law of the case doctrine is rooted in appellate framework, and its purpose is to prevent piecemeal litigation, *Reier v. State Dept. of Assessments & Taxation*, 397 Md. 2, 21, 915 A.2d 970, 981 (2007), and without it "any party to a suit could institute as many successive appeals as the fiction of his imagination could produce new reasons to assign as to why his side of the case should prevail, and the litigation would never terminate." *Id.* (quoting *Fid.-Baltimore Nat. Bank & Tr. Co. v. John Hancock Mut. Life Ins. Co.*, 217 Md. 367, 372, 142 A.2d 796, 798 (1958)).

at 341, 157 A.3d at 397. In so holding, the court rejected the *Dabbs* Class' argument that Bill No. 71-08 impaired their contractual and legal relationship with the County, also violating the rough proportionality/rational nexus doctrine. *Id.*

Finally, the court held valid also Bill No. 96-01, "which, effective February 3, 2002, authorized the County to use impact fees for temporary classroom structures provided they expanded the capacity of the schools to serve new development." *Dabbs*, 232 Md. App. at 338, 157 A.3d at 395. The court found that neither the rational nexus doctrine nor the takings clause applied to Bill No. 96-01. *Id.* The court noted further that "[t]he County's definition of [school] capacity is consistent with the enabling law for impact fees (1986 Md. Laws, ch. 350, § 1, codified at § 17–11–214), and it is the County, not the State [Board of Education], that determines the scope of its Impact Fee Ordinance." *Id.*

On 31 July 2017, we granted the *Dabbs* Class' certiorari petition, *Dabbs, et al., v. Anne Arundel County*, 454 Md. 677, 165 A.3d 473 (2017), to consider *only* the following questions:

> I. Did the lower courts err in determining that ". . . the rough proportionality test [or the rational nexus test] has no application to development impact fees . . . where monetary exactions are imposed," in contravention of *Howard County v. JJM*, 301 Md. 256, 482 A.2d 908 (1984)?
>
> II. Did the lower courts err in permitting the retroactive application of legislation and not finding a taking under Article III, section 40 of the Maryland Constitution?

### Standard of Review

Maryland Code (1973, 2006 Repl. Vol.), § 3–409(a) of the Courts and Judicial Proceedings Article provides that a court "may grant a declaratory judgment or decree in a

11

civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding." We have made clear that the decision to issue a declaratory judgment is within the sound discretion of the trial court. *Sprenger v. Pub. Serv. Comm'n of Maryland*, 400 Md. 1, 20, 926 A.2d 238, 249 (2007). Such discretionary matters are "much better decided by the trial judges than by appellate courts, and the decisions of such judges should only be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred." *Northwestern Nat'l Ins. Co. v. Samuel R. Rosoff, Ltd.*, 195 Md. 421, 436, 73 A.2d 461, 467 (1950). An abuse of discretion

> occurs where no reasonable person would take the view adopted by the [trial] court, or when the court acts "without reference to any guiding rules or principles. We will find an abuse of discretion when the ruling is clearly against the logic and effect of facts and inferences before the court, when the decision is clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result, when the ruling is violative of fact and logic, or when it constitutes an "untenable judicial act that defies reason and works an injustice.

*Powell v. Breslin*, 430 Md. 52, 62, 59 A.3d 531, 537 (2013) (internal citations and quotation marks omitted).

## Analysis

I. ***Nollan* and *Dolan* - Impact Fees & the Rough Proportionality/Rational Nexus Test.**

The *Dabbs* Class argues that the intermediate appellate court erred in concluding that the rough proportionality test/rational nexus test of *Nollan* and *Dolan* has no application to the present case.[16] As this argument goes, the County must "demonstrate

---

[16] The *Dabbs* Class argues sweepingly that *Nollan* and *Dolan* apply to the County's Impact Fee Ordinance, impact fee expenditures, and ineligible impact fee expenditures.

that its expenditure of impact fees was attributable reasonably to new development and each such expenditure reasonably benefitted 'new development' and/or individual 'against whom the fee was charged.'"

The County responds, consistent with its position asserted in *Halle* and the lower courts in *Dabbs*, that, in *Waters Landing*, 337 Md. at 40-41, 650 A.2d at 724, we held that the individualized determination of rough proportionality required by *Dolan* is not applicable to development impact fees or taxes that are imposed legislatively and set on a general basis across a jurisdiction or district.

At the outset, it must be remembered that the Takings Clause of the Fifth Amendment and Article III, § 40B of the Maryland Constitution do not prohibit the government from taking property for public use; rather, it requires the government to pay "just compensation" for any property it takes. U.S. Const. amend. V; MD Constitution, Art. 3, § 40. For "just compensation" to be paid, however, an actual taking of property must occur. The *Nollan* and *Dolan* line of cases was expanded recently to apply to a narrow set of monetary exactions, i.e., a condition of the payment of money for favorable governmental action on a required permit application for a specific parcel of land. *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 599, 133 S. Ct. 2586, 2591 (2013).

In *Koontz*, the Florida legislature enacted a regulation making it illegal for anyone to "'dredge or fill in, on, or over surface waters'" without a Wetlands Resource Management (WRM) permit acquired from the St. Johns River Water Management District (the District). *Koontz*, 570 U.S. at 601, 133 S. Ct. at 2592. Moreover, Florida enacted the

13

Water Resources Act, authorizing each district to regulate construction impacting waterways in the state. *Id.* Under this regulation, "a landowner wishing to undertake such construction must obtain from the relevant district a Management and Storage of Surface Water (MSSW) permit, which may impose 'such reasonable conditions' on the permit as are 'necessary to assure' that construction will 'not be harmful to the water resources of the district.'" *Id.*

Koontz proposed to develop the northern 3.7 acres of his 14.9 acre property, which would affect local waterways. *Id.* He applied to the District for WRM and MSSW permits. *Id.* The District reviewed Koontz's permit applications and approved them upon his agreement to either of two conditions:

> the District proposed that [Koontz] reduce the size of his development to 1 acre and deed to the District a conservation easement on the remaining 13.9 acres. To reduce the development area, the District suggested that [Koontz] could eliminate the dry-bed pond from his proposal and instead install a more costly subsurface storm water management system beneath the building site. The District also suggested that [Koontz] install retaining walls rather than gradually sloping the land from the building site down to the elevation of the rest of his property to the south. In the alternative, the District told [Koontz] that he could proceed with the development as proposed, building on 3.7 acres and deeding a conservation easement to the government on the remainder of the property, if he also agreed to hire contractors to make improvements to District-owned land several miles away. Specifically, [Koontz] could pay to replace culverts on one parcel or fill in ditches on another.

*Koontz*, 570 U.S. at 601–02, 133 S. Ct. at 2592–93. Koontz argued that the District's mitigation demands were excessive, and that he was entitled to money damages if the state agency's actions constituted a taking without just compensation. *Koontz*, 570 U.S. at 602, 133 S. Ct. at 2593. The Supreme Court held that a monetary exaction for mitigation as a

14

condition for issuing a land-use permit to enable development of an individual property must meet the nexus and rough proportionality requirements of *Nollan* and *Dolan*. *Koontz*, 570 U.S. at 612, 133 S. Ct. at 2599. The Supreme Court stressed that the requirements of *Nollan* and *Dolan* were the same for monetary exactions as for when "the government approves a permit on the condition that the applicant turn over property or *denies* a permit because the applicant refuses to do so." *Koontz*, 570 U.S. at 606, 133 S. Ct. at 2595 (emphasis in original).

In *Koontz*, the Supreme Court explained that its holding was distinguished from *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S. Ct. 2131 (1998) (plurality opinion),[17] explaining that "[u]nlike the financial obligation in *Eastern Enterprises*, the demand for money at issue here '[operated] upon . . . an identified property interest' by directing the owner of a particular piece of property to make a monetary payment." *Koontz*, 570 U.S. at 613, 133 S. Ct. at 2599. Thus, the District's proposed monetary exaction burdened Koontz's ownership and development of a *specific parcel of land*. *Id.* (emphasis added).

---

[17] In *Eastern Enterprises*[] the United States retroactively imposed on a former mining company an obligation to pay for the medical benefits of retired miners and their families. A four-Justice plurality concluded that the statute's imposition of retroactive financial liability was so arbitrary that it violated the Takings Clause. Although Justice Kennedy concurred in the result on due process grounds, he joined four other Justices in dissent in arguing that the Takings Clause does not apply to government-imposed financial obligations that d[o] not operate upon or alter an identified property interest. Relying on the concurrence and dissent in *Eastern Enterprises*, respondent argues that a requirement that petitioner spend money improving public lands could not give rise to a taking.

*Koontz*, 570 U.S. at 613, 133 S. Ct. at 2599 (internal quotation marks, citations, and parenthetical omitted).

15

The Court elaborated further that *Koontz* resembled cases holding "that the government must pay just compensation when it takes a lien—a right to receive money that is secured by a particular piece of property." *Koontz*, 570 U.S. at 613, 133 S. Ct. at 2599. In holding that the proposed monetary exaction in *Koontz* was subject to *Nollan* and *Dollan*, the Court emphasized that "[t]he fulcrum this case turns on [is] the *direct link* between the *government's demand and a specific parcel of real property*." *Koontz*, 570 U.S. at 613, 133 S. Ct. at 2599 (emphasis added).

The Court affirmed that taxes and user fees, however, are not takings subject to *Nollan* and *Dolan*, and assured that its holding did not affect the authority of governments to "impose property taxes, user fees, and similar laws and regulations that may impose financial burdens on property owners." *Koontz*, 570 U.S. at 615, 133 S. Ct. at 2601.

The *Dabbs* Class' surfeit of arguments relating to *Koontz's* application to the County's development impact fees does not convince us that they have a sound jurisprudential basis.[18] *Koontz* did not hold that land-use regulations are generally subject

---

[18] The *Dabbs* Class asserts that

> this case is specifically directed at the restricted use of lawful collected special funds, separated into trust accounts, and their restricted use [] to ensure that the fees and all interest accruing to Special funds are designated for improvements reasonably attributable to new development and are expended to reasonably benefit the new development. [Additionally, the Impact Fee Ordinance] restricts the use of these special funds stating, development impact fees shall be used for capital improvements within the development impact fee district from which they are collected, so as to reasonably benefit the property against which the fees were charged.[Thus,] it is beyond dispute that the County's impact fee ordinance is a land use permitting ordinance, as without payment in money or land, no permit will issue to develop a particular property.

16

to a takings analysis under *Nollan* and *Dolan*; rather, it held that challenges to governmental demands for money (except application fees) in connection with the permit review process for a specific property are subject to nexus and rough proportionality analysis. *Koontz*, 570 U.S. at 618-19, 133 S. Ct. at 2603. The Court went out of its way to stress that it was not expanding *Nollan* and *Dolan* much beyond its narrow confines:

> [Koontz's] claim rests on the [] *limited proposition* that when the government commands the relinquishment of funds linked to a specific, identifiable property interest such as a bank account or parcel of real property, a per se [takings] approach is the proper mode of analysis under the Court's precedent.

*Koontz*, 570 U.S. at 614, 133 S. Ct. at 2600 (citing *Brown v. Legal Foundation of Wash.*, 538 U.S. 216, 235, 123 S. Ct. 1406, 1419 (2003)) (emphasis added and internal quotation marks omitted). Thus, that direct link lead the Court to conclude

> that this case implicates the central concern of *Nollan* and *Dolan*: the risk that the government may use its substantial power and discretion in land-use permitting to pursue governmental ends that lack an essential nexus and rough proportionality to the effects of the proposed new use of the specific property at issue, thereby diminishing without justification the value of the property.

*Id.* The exactions concept protects citizens against abuses of power by land-use officials concerning proposed quasi-judicial or administrative action for permit or other development approvals relative to an *individual parcel of land*. There is no analogy to the *Koontz* scenario present here.[19] The County's Development Impact Fee Ordinance is

---

Simply making naked contentions such as these, without appropriate citation of authorities or cogent legal analysis, is unconvincing.

[19] *Koontz's* opinion did not alter *Enterprises v. Apfel*, 524 U.S. 498, 540, 118 S. Ct. 2131, 2154 (1998) (Kennedy, J. concurring), where Justice Kennedy, in a plurality concurrence, joined by four dissenters (Justices Stevens, Souter, Ginsberg and Breyer),

17

imposed broadly on all properties, within defined geographical districts, that may be proposed for development. The legislation leaves no discretion in the imposition or the calculation of the fee, i.e., the Impact Fee Ordinance demonstrates how the fees are to be imposed, against whom, and how much. The Ordinance is aimed at

> [a]ny person who improves real property and thereby causes an impact upon public schools, transportation, or public safety facilities shall pay development impact fees as provided in this subtitle [and] Any person who subjects an existing use to a change of use or improvement that causes any impact on public schools, transportation, or public safety facilities shall pay a fee based on the net increase in impacts attributable to the change of use or improvement.

§§ 17-11-203, 206. Unlike *Koontz*, the Ordinance here does not direct a property owner to make a conditional monetary payment to obtain approval of an application for a permit of any particular kind, nor does it impose the condition on a particularized or discretionary basis. *See Monterey v. Del Monte Dunes at Monterey, Ltd.* 526 U.S. 687, 702, 119 S. Ct. 1624, 1635 (1999) ("[W]e have not extended [until the narrow holding in *Koontz*] the rough-proportionality test of *Dolan* beyond the special context of exactions—land-use

---

held that the Coal Act, which imposed a financial burden on mine owners without regard to a specific parcel of property, did

> not operate upon or alter an identified property interest, and it is not applicable to or measured by a property interest. The Coal Act does not appropriate, transfer, or encumber an estate in land (e.g., a lien on a particular piece of property), a valuable interest in an intangible (e.g., intellectual property), or even a bank account or accrued interest.
>
> Until today, however, one constant limitation has been that in all of the cases where the regulatory taking analysis has been employed, a specific property right or interest has been at stake.

18

decisions conditioning approval of development in the dedication of property to public use.).

The imposition of an impact fee under the Ordinance here, as the dissent in *Koontz* and the plurality dissent in *Eastern Enterprises* put it, applied on a generalized district-wide basis, making no determination as to whether an actual permit will issue to a payor individual with a property interest. *See Koontz*, 570 U.S. at 628, 133 S. Ct. at 2608 (Kagan, J. dissent) ("The majority might, for example, approve the rule, adopted in several States, that *Nollan* and *Dolan* apply only to permitting fees that are imposed ad hoc, and not to fees that are generally applicable"); *Eastern Enterprises*, 524 U.S. at 540, 118 S. Ct. at 2154 (Kennedy, J., concurring in the judgment and dissenting in part) ("[The Act] does not operate upon or alter an identified property interest, and it is not applicable to or measured by a property interest."). The legislatively-imposed development impact fee is predetermined, based on a specific monetary schedule, and applies to any person wishing to develop property in the district. *See* §§ 17-11-101, 203, 206, 209(d). This case falls squarely within *Dolan's* recognition that impact fees imposed on a generally applicable basis are not subject to a rough proportionality or nexus analysis. *Dolan*, 512 U.S. at 385, 114 S. Ct. at 2316 ("the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel," rather than involving an "essentially legislative determinations classifying entire areas of the city.").

The *Dabbs* Class obscures its argument further by looking for support in *Howard County v. JJM, Inc.*, 301 Md. 256, 281, 482 A.2d 908, 921 (1984), where we held "that in order to exact from a developer a setting aside of land for highway purposes there must be

19

a reasonable nexus between the exaction and the proposed subdivision [of the parcel to be developed]." Although we utilized the rational nexus test there (as it was formulated circa 1984), we are not convinced that its application is apt in the present proceedings. In fact, *JJM* cuts against the *Dabbs* Class due to its explanation of the application of Maryland's taking jurisprudence. *See id.* (a statute requiring developers to reserve a right-of-way for a proposed state road was an unconstitutional taking of developer's property without just compensation.). *JJM's* application of the rational nexus test in a traditional taking analysis does not support the *Dabbs* Class' contention that the rational nexus text extends (or should extend) to the context of development impact fees.

The *Dabbs* Class maintains that, if we find inapplicable *Nollan* and *Dolan* to the present impact fee ordinance, we would be walking against the wind of the majority of our sister states that have held to the contrary. The *Dabbs* Class offers-up in this regard a single case from the Ohio Supreme Court, *Home Builders Ass'n of Dayton & the Miami Valley v. Beavercreek*, 89 Ohio St.3d 121, 128, 729 N.E.2d 349, 356 (Ohio 2000), holding impact fee expenditures, or the imposition of an impact fee ordinance, subject to *Nollan* and *Dolan*.

This is waver-thin support for the *Dabbs* Class' contention that the rough proportionality/rational nexus test is the "most widely used standard for examining development [i]mpact fees or [] monetary exactions."[20] In fact, reality suggests the

---

[20] The *Dabbs* Class makes repeated assertions that the majority of courts in this country apply *Nollan* and *Dolan* to impact fees or monetary exactions. Yet, the *Dabbs* Class offers little to no legal basis for this assertions. For example, it asserts that:

> [the *Dabbs* Class] will demonstrate and review the fact that sister states have, to [the *Dabbs* Class]'s knowledge, all held *Nollan* and *Dolan* are

embodied in the Rational/Dual Rational Nexus Test in deciding a challenge to impact fee expenditures[;]

The rational nexus test or doctrine is the most widely used standard for examining development Impact fees or development monetary exactions[;]

The Ohio Supreme Court and those of all sister states have each recognized, as does §§ 208, 209 and 210 of the County's Impact Fee Ordnance, that *Nolan* and *Dolan*'s rough proportionality test is tantamount to the rational nexus test uniformly embraced by all Courts of Appeal[; and,]

Respectfully, the Court [of Special Appeals] below, appears to have accepted at face value a mistaken premise argued by the County that was rejected not only by U.S. Supreme Court, but all Courts of Appeal who have held that, even prior to *Koontz*, the rational nexus test/dual rational nexus test was applied to impact fee exactions.

21

opposite conclusion.[21]  We re-affirm our holding in *Waters Landing*,[22] and, thus, conclude

that *Koontz* is inapplicable to the Impact Fee Ordinance in this case.  Impact fees imposed

---

[21] *See California Bldg. Indus. Assn. v. City of San Jose*, 351 P.3d 974, 991 n.11 (Cal. 2015) (a post-*Koontz* case explaining that, despite *Koontz*, it agrees with its prior cases holding "that legislatively prescribed monetary fees [of general application] that are imposed as a condition of development are not subject to the *Nollan*/*Dolan* test."); City *of Olympia v. Drebick*, 126 P.3d 802, 808 (Wash. 2006) ("the dissent [fails to] mention that neither the United States Supreme Court nor this court has determined that the tests applied in *Nollan* and *Dolan* to evaluate land exactions must be extended to the consideration of fees imposed to mitigate the direct impacts of a new development, much less to the consideration of more general growth impact fees imposed pursuant to statutorily authorized local ordinances."); *Rogers Mach., Inc. v. Washington County*, 45 P.3d 966, 978 (Or. Ct. App. 2002) (concluding "that the [Traffic Impact Fee] is [a applicable generally development fee imposed on a broad range of specific, legislatively determined subcategories of property], and [the court was] persuaded by the reasoning of other state courts, representing a nearly unanimous view, that *Dolan's* heightened scrutiny test does not extend to development fees of that kind."); *Krupp v. Breckenridge Sanitation Dist.*, 19 P.3d 687, 698 (Colo. 2001) ("the [Plant Investment Fee] does not fall into the narrow category of charges that are subject to the *Nollan*/*Dolan* takings analysis."); *Home Builders Association of Central Arizona v. City of Scottsdale*, 187 Ariz. 479, (1997) (explaining that *Dolan* is inapplicable because the case before it involved a generally applicable legislative decision by the city); *Ehrlich v. City of Culver*, 911 P. 2d 429, 446-47, 450-52 (Cal. 1996) ("it is not at all clear that the rationale (and the heightened standard of scrutiny) of *Nollan* and *Dolan* applies to cases in which the exaction takes the form of a generally applicable development fee or assessment—cases in which the courts have deferred to legislative and political processes to formulate 'public program[s] adjusting the benefits and burdens of economic life to promote the common good.'" (quoting *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S. Ct. 2646 (1978))); *McCarthy v. City of Leawood*, 257 Kan. 566 (Kan. 1995) ("There is nothing in the opinion, however, which would apply the same conclusion to Leawood's conditioning certain land uses on payment of a fee.  The landowners cite no authority for the critical leap which must be made from a fee to a taking of property.").

[22] *Waters Landing* held that a
development impact tax is not a special benefit assessment because it is not a tax  imposed by law on real property; rather, it is an excise tax imposed when an owner seeks to develop its land. . . .  We think *Dolan*, which concerned the Fifth Amendment Takings Clause, is irrelevant to the issue of special benefit assessments and generally inapplicable to this case.  [*Dolan*], specifically relied on two distinguishing characteristics that are absent in the instant case.  First, the Court mentioned that instead of making "legislative

22

by legislation applicable on an area-wide basis are *not* subject to *Nollan* and *Dolan* scrutiny.

II. **But, Did the *Dabbs* Class' Rights to Refunds Vest Before the County Extinguished the Refund Process?**

*a. Bill No. 27-07.*

The *Dabbs* Class argues (as best we are able to perceive) that: 1) "[r]etroactive Bill [No.] 27-07 cannot be applied to capital projects that were completed and closed long before its enactment as an emergency ordinance on [23 May 2007];" 2) "Bill [No.] 27-07

---

determinations classifying entire areas of the city," the City of Tigard "made an adjudicative decision to condition [the landowner's] application for a building permit on an individual parcel." [*Dolan*, 512 U.S. at 385, 114 S. Ct. at 2316]. Second, the Court noted that "the conditions imposed were not simply a limitation on the use [the landowner] might make of her own parcel, but a requirement that she deed portions of the property to the city." *Id.* In contrast, Montgomery County imposed the development impact tax by legislative enactment, not by adjudication, and furthermore, the tax does not require landowners to deed portions of their property to the County.

Furthermore, *Dolan* is inapplicable because it concerns the Takings Clause, which is not implicated in the case before us. To the extent that this tax is a regulation on the development of land, it is not a regulation that "'goes too far'" so as to be "'recognized as a taking.'" *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, [1015], 112 S. Ct. 2886, 2893[] (1992) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S. Ct. 158, 160 [] (1922)). A regulation does not "go too far" unless it either "compel[s] the property owner to suffer a physical 'invasion' of his property," or "denies all economically beneficial or productive use of land." [*Pennsylvania Coal*, 505 U.S.] at [1015], 112 S. Ct. at 2893[]; *see also Pitsenberger v. Pitsenberger*, 287 Md. 20, 34, 410 A.2d 1052[, 1060] (1980) ("To constitute a taking in the constitutional sense, so that the State must pay compensation, the state action must deprive the owner of all beneficial use of the property."). . . . Petitioners have not claimed, nor could they claim, that the impact tax has either of these two regulatory effects. Therefore, the Takings Clause being inapplicable, *Dolan* does not affect our decision.

337 Md. at 39-41, 650 A.2d at 724.

23

was not an emergency ordinance as alleged;" 3) "Bill [No.] 27-07 interfered with the judicial process;" and, 4) "Bill [No.] 27-07 affects substantive rights."[23]  Restated, the *Dabbs* Class argues that the County counted improperly impact fees encumbered during the 1997-2003 FYs, and cannot remedy that error now through an unlawful retrospective application of Bill No. 27-07 in violation of their vested rights to obtain impact fee refunds.

The County responds that this Court, the Court of Special Appeals, and numerous adjudications by the circuit court rejected the *Dabbs* Class' argument regarding the County's "ineligible expenditures" and the retrospective nature of Bill No. 27-07.  The Country avers that it has been decided, profusely, that "Bill No. 27-07, which did nothing more than codify the County's existing [administrative] procedures for counting impact fee expenditures and encumbrances [] did not retroactively change County policy or purport to take away an accrued cause of action for refunds."

We subscribe to the following from the circuit court's 14 January 2016 memorandum opinion regarding the *Dabbs* Class' argument regarding the retrospective effect of Bill No. 27-07:

---

[23] The *Dabbs* Class relies, in support of this contention, on a *Halle* circuit court holding where a judge purportedly "found in his approved findings of fact and conclusions of law that 'Bill 27-07 [and its] retroactive effect . . . provided a new definition for encumbrance of impact fees which was not part of the prior ordinance.  It sought to eliminate the prior requirement for timely recording in capital project funds of unused impact fees encumbered.  If applied retroactively, this provision would eliminate the right of many impact fee payers to refunds, and, thus, it presents a substantive and not merely a procedural change of the law.'"  No citation of specific origin follows this quotation , which might aid us in appreciating its lineage.  In any event, these findings run counter to the intermediate appellate court's 2017, 2013, and 2008 *Halle* opinions and this Court's 2009 *Halle* opinion.

In pressing their retroactivity argument about encumbrances, [the *Dabbs* Class] seem to cling to an interpretation of the impact fee ordinance and its amendments that was made by their predecessor plaintiffs in the *Halle* litigation which counsel in this case[24] made with great vigor when representing those plaintiffs. That argument was soundly rejected in great detail in an unreported opinion by Judge Lawrence F Rodowsky. [] *Halle* [], [] No. 2552, Sept. Term 2006 [at] 15 - 20.[25] Since this litigation has different parties and a different period of time for the collection of the impact fees, it is technically not a law of the case holding applicable to this case nor as an unreported opinion it is not a citable holding that in binds this Court in this case.

This Court's view is however identical to that of Judge Rodowsky's and there is no need in this document to rehash it or restate it except to say that the ordinance since its inception in 1987 has contained the terms "expended or encumbered" which were not otherwise defined in the Ordinance and that the way the County has interpreted these terms since the inception were the commonly accepted meaning of these terms under GAAP. The fact that the County eventually codified and refined its practices in Bill No. 27-07 does not mean that [the *Dabbs* class] are entitled to their own peculiar methods which would enhance the possibility of refunds.

We see no value in hashing anew the *Dabbs* Class' warmed-over and repetitious arguments. As was explained in great detail in the *Halle* chronicle,[26] the intermediate

---

[24] Lead counsel for the *Dabbs* Class here was also co-counsel for the *Halle* Class.

[25] Judge Rodowsky found it unnecessary to determine "whether the express retroactivity of [Bill No. 27-07] is valid" because the definition of "encumbrance" used in present § 17-11-201(2) was the "pre-existing, generally accepted meaning of the term . . ." and properly adherent to GAAP. *Halle*, No. 2552, Sept. Term, 2006 at 1-8. He, in determining that the circuit court erred in not considering encumbered impact fees in its impact fee refund analysis, held that the circuit court is to determine "the amount of impact fees that had been encumbered, but unexpended, within six years following their collection." *Id.* at 20.

[26]*Halle Development, Inc. et al v. Anne Arundel County*, No. 1299, Sept. Term, 2016, at 16 (Md. Ct. Spec. App. Nov. 22, 2017) ("To the extent that appellants attempt to reargue that the circuit court retroactively applied Bill No. 27-07 because of our use of its definition of 'encumbrance' in our 2008 opinion, we have already explained, in both our 2008 and 2013 opinions that" this case is not about vesting and the owners' rights in any specific refund award are not vested); *Halle Development, lnc. et al. v. Anne Arundel County*, No. 0956, Sept. Term 2011 at 11-14 (Md. Ct. Spec. App. 29 July 2013) ("[T]he

25

appellate court (in four separate opinions) and this Court ruled that the retrospective application of essentially Bill No. 27-07 has no applicability to the *Halle* litigation. We made clear that "[a] change in procedure or in a remedy, whether administrative or judicial, *which does not modify substantive rights*, is ordinarily applied to pending matters as well as to all remedial actions taking place after the effective date of the change." *State Admin. Bd. of Election Laws v. Bd. of Sup'rs of Elections of Baltimore City*, 342 Md. 586, 601, 679 A.2d 96, 103 (1996) (emphasis added).

We state, with hopeful finality, that Bill No. 27-07 does not work a substantive change in policy interfering with any vested rights of the *Dabbs* Class. As record evidence indicates, Bill No. 27-07 codified the County's pre-existing (though unwritten until Bill No. 27-07) administrative procedures for counting impact fee encumbrances and did not change County policy. *Cf. Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 643, 805 A.2d 1061, 1084 (2002). Bill No. 27-07 (effective 22 May 2007) defined, among other

---

law of the case doctrine precludes re-litigation of these issues." "The Court of Appeals' conclusion that Owners have no rights vested in impact fee refunds further buttresses our holding that the retroactivity of the Ordinance is not implicated here. Accordingly, we hold that Owners' arguments regarding the retroactivity provision of Bill 27-07 are not relevant to this case"); *Order* (at 6), Judge Philip Caroom, *Halle Development, lnc. et al. v. Anne Arundel County*, Circuit Court for Anne Arundel County, Case No. C-01-69418 (25 March 2011) (the circuit court found that we decisively ruled that, "because impact fee payer's rights are not vested, the County [] properly could provide for rules providing for retroactive accounting entries as to encumbrances. The law of the case doctrine . . . [binds the court]."); *Halle*, 408 Md. at 560, n.7, 971 A.2d at 226, n.7 ("This case is not about vesting." "Accordingly, the determination by the Circuit Court as to the amount of the refund may be modified on remand, and the Owners' rights in any specific refund award are not vested."); *Halle*,[] No. 2552, Sept. Term 2006, [at] 15 n.15 ("Because we consider the definition in present §17-11-201(2) simply to state the preexisting, generally accepted meaning of the term, 'encumbrance,' in the context, it is unnecessary for us to determine whether the express retroactivity provision of the amended ordinance is valid.").

things, the word "encumbrance" as now used in §17-11-201(2). The intermediate appellate court and the circuit court in *Halle*, and in the present litigation, pronounced that the definition utilized before the enactment of Bill No. 27-07 conformed to generally accepted accounting principles (GAAP).[27] Moreover, the intermediate appellate court declared in its 2008 opinion, the 2006 circuit court's reference to the County's procedure for showing an encumbrance (conforming to GAAP, but notwithstanding the 2006 circuit court's holding that the County shall not consider encumbrances in the budget process) for deploying impact fees, to be "a reasonable one." *Halle*, No. 2552, Sept. Term, 2006 at 15, 20 (overturning, nevertheless, the 2006 circuit court's decision and remanding "on the encumbrance issue for a determination of the amount of impact fees that had been unencumbered, but unexpended, within six years following their collection."). Suffice it to say, we agree.

In our 2009 *Halle* opinion, we contemplated that the *Halle* Class had no vested rights in impact fee refunds via the method of calculation codified in Bill No. 27-07:

> *This case is not about vesting.* It is about the [County's Planning and Zoning Officer's] [(]PZO's[)] lack of authority under the impact fee ordinance to go back and made administrative decisions it failed to effectively execute when permitted. *Indeed, the Owners may not be vested in their right to a refund.* Whether they are entitled to a refund and in what amount will be determined by the Circuit Court on remand. The full refund amount determined by the Circuit Court may be reduced if the County is able to prove that it, in fact, encumbered the impact fee funds within six years.

*        *        *

---

[27] Under GAAP, an encumbrance is a legal commitment, such as a purchase order, entered in relation to an appropriation.

The intermediate appellate court held in its May 7, 2008 unreported opinion that the Circuit Court, on remand, should re[-]determine the amount that the County had timely encumbered for eligible capital improvements, and in doing so, "should consider not only encumbrances for transportation projects, but for school projects as well when applying the six-year test." We did not grant certiorari as to this issue, and thus the decision of the [I]ntermediate appellate court is law in this case. *Accordingly, the determination by the Circuit Court as to the amount of the refund may be modified on remand, and the Owners' rights in any specific refund award are not vested.*

*Halle*, 408 Md. at 559, n.7, 971 A.2d at 226, n.7 (emphasis added). We are perplexed that we, the intermediate appellate court, and the circuit court have been called upon continually to beat, with a judicial gavel, the proverbial dead horse on this point. Although this case deals with impact fees collected from FYs 1997-2003, as opposed to the FYs implicated in *Halle* (1988-1996), given the closely intertwined and similar nature of the arguments and allegations advanced in the two litigation streams, we fail to see how (or any reason why) we should reach a different conclusion than that reached in *Halle*. Bill No. 27-07 did not interfere with any vested rights of the *Dabbs* Class. We decline to address any remaining arguments the *Dabbs* Class asserted relating to Bill No. 27-07.

> b. *Bill No. 71-08.*

Finally, we confront a legitimately novel question. Neither we, nor any *Halle* court, have had the prior opportunity to consider whether Bill No. 71-08, i.e., repealing prospectively on 1 January 2009, the impact fee refund provision of § 17-11-210, interfered with any rights vested in a *Dabbs* Class member with regard to impact fee refunds. The *Dabbs* Class argues "[t]his ordinance is yet another clear abuse of government power that attempts to dictate the outcome of this litigation by a rear[]view mirror exclusion of FYs

28

2002 - 2008 collected fees, making a ripeness argument." We understand this to mean that the *Dabbs* Class contends that a prospective application of the repeal means that the repeal applies only to impact fees collected after the effective date of Bill No. 71-08 (1 January 2009).

The County, on the other hand, contends that Bill No. 71-08 "eliminated [the *Dabbs* Class'] right to recover available refunds of fees collected after FY 2002, and did not interfere with vested rights of [the *Dabbs* Class]." Thus, the prospective repeal of a substantive right to assert a claim grounded within a statute bars any unvested claim before the effective date of the repeal of the availability of refunds effected by the statute.

Statutes are given presumptively purely prospective effect. *Grasslands Plantation, Inc. v. Frizz-King Enterprises*, LLC, 410 Md. 191, 226, 978 A.2d 622, 642 (2009) (explaining that "[t]he basic reason we presumptively apply new legislation prospectively is our concern that a retrospective application may interfere with substantive rights."); *Traore v. State*, 290 Md. 585, 593, 431 A.2d 96, 100 (1981). *Dal Maso v. Bd. of County Com'rs of Prince George's County*, 182 Md. 200, 206–07, 34 A.2d 464, 467 (1943), explained that

> [the] Legislature can amend, qualify, or repeal any of its laws, affecting all persons and property which have not acquired rights vested under existing law; all of the courts agree on this. It has been frequently held that this rule applies also to boards and agencies to which legislative power has been delegated and that they may undo, consider and reconsider their action upon measures before them. It is a general rule, subject to certain qualifications hereinafter noted, that a Municipal Corporation has the right to reconsider its actions and ordinances, and adopt a measure or ordinance that has previously been defeated or rescind one that has been previously adopted before the rights of third parties have vested. Moreover, in the absence of statute or a rule to the contrary, the Council may reconsider, adopt or rescind an

29

> ordinance at a meeting subsequent to that at which it was defeated or adopted, at least where conditions have not changed and no vested rights have intervened.

(internal citations and quotation marks omitted); *see also Waterman Family Ltd. P'ship v. Boomer*, 456 Md. 330, 344, 173 A.3d 1069, 1077 (2017). Indeed, "[a]bsent a contrary intent made manifest by the enacting authority, any change made by statute or court rule affecting a remedy only (and consequently not impinging on substantive rights) controls all court actions whether accrued, pending or future." *Aviles v. Eshelman Elec. Corp.*, 281 Md. 529, 533, 379 A.2d 1227, 1229 (1977); *see also State Admin. Bd. of Election Laws*, 342 Md. at 601, 679 A.2d at 103; *Grandison v. State*, 341 Md. 175, 257, 670 A.2d 398, 437 (1995) ("Despite the presumption of prospectivity, a statute affecting a change in procedure only, and not in substantive rights, ordinarily applies to all actions whether accrued, pending or future, unless a contrary intention is expressed.").

Rights, of a purely statutory origin, untraceable to the common law, "are wiped out when the statutory provision creating them is repealed, regardless of the time of their accrual, unless the rights concerned are vested." *Selig v. State Highway Admin.*, 383 Md. 655, 676, 861 A.2d 710, 723 (2004) (quoting *Beachwood Coal Co. v. Lucas*, 215 Md. 248, 256, 137 A.2d 680, 684 (1958)). Thus, once the repealed sections of a statue fade into the mist, any claim to relief traced to a repealed section disappears as well. *McComas v. Criminal Injuries Comp. Bd.*, 88 Md. App. 143, 149, 594 A.2d 583, 586 (1991) (quoting *Aviles*, 281 Md. at 535, 379 A.2d at 1231) ("This rule of statutory construction is as applicable to an amendment that limits a purely statutory right as it is to one that completely repeals a right created by statute.").

30

A legislative body is free to react proactively to changing circumstances and repeal or supplement acts or ordinances it finds inadequate or inappropriate to address present-day circumstances. *See Waterman Family Ltd. P'ship*, 456 Md. at 344-45, 173 A.3d at 1078 ("Were it otherwise, legislative action would be frozen in time with local officials unable to react to changed circumstances or to pursue policies presently preferred over those previously adopted. The general power of a governing body to rescind a prior law or policy on a matter subject to its jurisdiction may be constrained in particular circumstances, as when a party has acquired a vested right in the governing body's prior policy decision. Absent such circumstances, the governing body retains the option of changing its mind.").

The right to rescind a statute, however, is not absolute. "If rights were to vest during the interim between the enactment of a resolution and its rescission, the County would lose its ability to rescind, at least to the extent that rights had vested." *Boomer v. Waterman Family Ltd. P'ship*, 232 Md. App. 1, 12, 155 A.3d 901, 908 (2017) (citing *Dal Maso*, 182 Md. at 206-07, 34 A.2d at 467) *aff'd*, 456 Md. 330, 173 A.3d 1069 (2017). We have explained "vested" to mean an accrued right or one that has been completed or "consummated so precocious" it becomes impossible to be eradicated statutorily. *See, e.g., Langston v. Riffe*, 359 Md. 396, 420, 754 A.2d 389, 401 (2000). In other words, to be vested, a right must be more than a mere expectation based on the anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand. *McComas*, 88 Md. App. at 150, 594 A.2d at 586. (quotation marks and brackets omitted).

31

We agree with the theoretical premise in the present proceeding that "claims for refunds of impact fees collected in FYs 1997–2002, which were not expended or encumbered within six [fiscal years] following the year of collection, were ripe prior to the repeal and may be pursued in this case," if any exist. *Dabbs*, 232 Md. App. at 342 n.8, 157 A.3d at 397 n.8. That premise is of no assistance to the *Dabbs* Class because the County's evidence (accepted as credible and convincing by the circuit court) demonstrated "that the impact fees collected in [FY 1997-2002] were in fact reasonably expended or encumbered during the following six-year period such that no refunds are available to the plaintiffs or the class they represent."

The *Dabbs* Class contends that all fees collected between FY 1997-2003 were ripe for refund at the time the trial in this matter took place in 2010-2011. We disagree; rather, refunds for impact fees collected and unexpended or unencumbered through 2003 were not ripe for collection.

*McComas v. Criminal Injuries Compensation Board* is convincing on this question. In *McComas*, the court considered whether the "amendment to Md. Ann. Code art. 26A (1987) [(of the Criminal Injuries Compensation Act]), are applicable to [McComas'] claim before the Criminal Injuries Compensation Board ("Board") which was filed before the effective date of the amendments."[28] *McComas*, 88 Md. App. at 145, 594 A.2d at 583-84. McComas, who filed a criminal injuries claim[29] and was heard by the Board before the

---

[28] The only amendment at issue in *McComas* that is relevant to our present analysis limited the amount of compensation the Board may award a claimant.

[29] Before the amendment took effect, McComas "had been awarded compensation in the amount of $666.80 and had a pending claim for additional benefits." The pending

32

amendments took effect, averred that the amendments should not be applied to his claim retrospectively because they affected his substantive rights. *McComas*, 88 Md. App. at 146–47, 594 A.2d at 584. The court began its analysis by noting the general rule that rights of pure statutory origin, "unless vested, are subject to repeal or amendment at the will of the legislature." *McComas*, 88 Md. App. at 147, 594 A.2d at 584-85. Moreover, the court explained that any claimant seeking compensation under the Criminal Injuries Compensation Act does not have a vested right to compensation from the State *until* the Board finds the claimant is eligible for such an award. *McComas*, 88 Md. App. at 148, 594 A.2d at 585 (emphasis added).

The court amplified, in *In Re Samuel M.*, 293 Md. 83, 95, 441 A.2d 1072, 1078 (1982), that:

> Treatment as a juvenile is not an inherent right but one granted by the state legislature [;] therefore the legislature may restrict or qualify that right as it sees fit, as long as no arbitrary or discriminatory classification is involved.

This is also supported by . . . *Beechwood Coal Co.* [*v. Lucas*, 215 Md. 248, 255–56, 137 A.2d 680, 684 (1958),] wherein [we] stated:

> Our views are reinforced by the special rule of statutory construction that rights[,] which are of purely statutory origin and have no basis at common law are wiped out when the statutory provision creating them is repealed, regardless of the time of their accrual, unless the rights concerned are vested.

---

claim for additional benefits awarded him $45,000 – the amended statutory maximum. *McComas v. Criminal Injuries Comp. Bd.*, 88 Md. App. 143, 146, 594 A.2d 583, 584 (1991).

The court held ultimately that McComas "did not have a vested, legally enforceable right to compensation beyond $666.80 [and McComas'] award of compensation made after the amendments were enacted was correctly limited to $45,000." *McComas*, 88 Md. App. at 151, 594 A.2d at 586

We applied this principle of statutory construction in *Aviles* (in the context of a repeal of a mechanics' lien statute) that a mechanic's lien, a creature purely of statue, is "obtainable only if the requirements of the statute are complied with." *Aviles*, 281 Md. at 536, 379 A.2d at 1231 (quoting *Freeform Pools v. Strawbridge*, 228 Md. 297, 301, 179 A.2d 683, 685 (1962)). Thus, claimants would be unsuccessful in seeking a mechanic's lien, under what was codified in Md. Code §§ 9-101-108, 9-111 and 9-113 of the Real Property Article (1974 & 1995 Cum. Supp.), because "the repealed sections of the statute as they existed prior to May 4, 1976, have disappeared as affecting this case to the same extent as though they never existed." *Aviles*, 281 Md. at 535, 379 A.2d at 1230.

The repeal of the impact fee provision of § 17-11-210 took effect on 1 January 2009. Under the prior amended § 17-11-210(b), within 60 days following the end of the sixth fiscal year[30] from when impact fees were collected, the County was to give notice to the public of the availability of impact fee refunds, if any. Upon the notice's publication, an eligible property owner must apply for a refund within 60 days of the publication of the last notice. The County, following an assessment that the applicant had paid rightfully the fees, would refund any available unexpended impact fees to the eligible property owner,

---

[30] The parties agree that the relevant fiscal year here runs from July 1 through the following June 30.

34

with interest. Until such time, property owners in the district from which funds were collected were *not* entitled to refunds.

Here, impact fees collected from the *Dabbs* Class through FY 2003 (the last year in the applicable six-year period and which was the basis of the refund claims asserted here) would be eligible for refunds (if any existed) on or about 29 August 2009, i.e., six years (and the 60-day notice period) following the fiscal year of impact fee collection. The effective date of the repeal of the refund provision of § 17-11-210 occurred well before any impact fees collected through 2003 became ripe for a refund claim. The rationales of *McComas* and *Aviles* evince a transparent legislative practice that if a party's rights have not vested before a statute's repeal, there can be no claim as of right to the relief the statue once granted. Here, as in *McComas*, the County, before paying any potential impact fee refunds, had to determine (after a petition by an eligible property owner) if refunds were due from the FY of relevant collection. Until such time, no eligible owner had vested rights in the refunds. Thus, the *Dabbs* Class' claims for refunds of impact fees collected through FY 2003 was not ripe until 29 August 2009 - after the effective date of the repeal of the refund provision in § 17-11-210.

The *Dabbs* Class protests that this constitutes a "cooking of the books," i.e., the County misrepresented intentionally facts to the court, and the passage of Bill No. 27-07 and Bill No. 71-08 were done with intent to deprive the *Dabbs* Class of money they were owed. We disagree, and in response, associate ourselves with the eulogy pronounced by the circuit court in dispensing with this argument,

35

[the *Dabbs* Class] seem to broadly suggest that when the Impact Fee Ordinance was enacted that those provisions that pertained to accounting of the fees paid and the possibility of a refund at some future time, *were somehow frozen in amber unable* to be revised or improved by the County as experience demonstrated a need. This would be a surprising result given that as explained above, development impact fee provisions were novel in Maryland and in the County and in some respects were an on going experiment in fiscal funding of the needs arising from development projects. It is exactly the type of legislation that over time may need review and revision to accomplish its intended goals.

(emphasis added). Although the timing of the adoption of Bill No. 27-07 and Bill No. 71-08 may appear, on their faces, opportunistic, they do not exceed the bounds of what the County was authorized by law to do. *See Aviles*, 281 Md. at 535, 379 A.2d at 1230.

The *Dabbs* Class asserted sporadically its dissatisfaction with Bill No. 96-01 in the circuit court and intermediate appellate court in this case. Bill No. 96-01, effective 3 February 2002, authorized, *inter alia*, the County to use impact fees for temporary classroom structures provided the structures expand the capacity of the schools. It appears that they have abandoned, however, any argument to this effect before us. The *Dabbs* Class maintains that they cited Bill No. 96-01 "*passim*" throughout its brief. We, however, could find only two instances where the *Dabbs* Class referred to Bill No. 96-01 in its brief[31] and one reference in its reply brief where it notes that "[t]he Class because of limited space adopts its arguments on Bill 71-08 and State Rated Capacity precludes impact fee

---

[31] First, "[a]nd while the County's 2008 replenishment of pre 1996 fees and their reallocated expenditure on 2008 capital projects was a per se taking, the character of the County's actions in enacting Bills 96-01, 27-07 and 71-08 during pending litigation, each designed to prevent refunds, bears additional consideration as a regulatory taking . . . ." Second, "Anne Arundel County, in a trilogy of ordinances, Bill 27-07, 96-01 and 71-08 presented a fluctuating legislative policy, knowing who would, in pending litigation, benefit from each ordinance it enacted, the County."

expenditures 'countywide' for relocatable classrooms."  We cannot discern where (or if) the *Dabbs* Class asserted meaningful legal arguments (with supporting authorities) regarding the applicability of Bill No. 96-01.[32]

Moreover, the *Dabbs* Class asserts and re-asserts a plethora of alternative arguments "supporting" their claim to its entitlement to impact fee refunds.[33]  We adopt, in response to those arguments, once more, "[w]e did not grant certiorari as to [these questions], and thus, the decision of the intermediate appellate court is the law in this case." *Halle*, 408 Md. at 559 n.7, 971 A.2d at 226 n.7.

We find no error or abuse of discretion by any court in this case.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**

---

[32] The County, nevertheless, responds briefly that, under conflict preemption (the apparent basis the *Dabbs* Class asserts in support of its argument), "there is nothing in the State definition of [State Rated Capacity] [(]SRC[)] that prohibits the County from applying a definition of [school] capacity for purposes of determining the scope of its use of impact fees broader than the definition used by the State Department of Education for school finance purposes."

[33] We do not address the *Dabbs* Class' following naked arguments, and allegations, including, but not limited to, that: (1) the December 2000 impact fee study committee's report to the county executive made clear the rational nexus test was the legal foundation of the county's impact fee ordinance; (2) "[t]his Court cannot now condone the County's unconscionable shell game gimmickry, it made through known misrepresentations to all courts, regarding its alleged exclusion of the identical fees it now admits were "dollar for dollar" replenished and then reallocated in 2008 to support projects not even in existence in 1996; (3) Bill No. 27-07 was not an emergency ordinance as alleged; (4) Bill No. 27-07 is an abuse of legislative power; (5) Bill No. 27-07 interfered with the judicial process; and, (6) claims relating to the County's 9.9 million "dollar for dollar" replenishment of expended pre-1996 ineligible impact fees.